# SUPREME COURT.

## Stephen V. White agt. Daniel Drew

*Stock — Contract to carry — Valuable information sufficient consideration to uphold — Statute of frauds.*

Reliable information as to facts upon which the future price of a stock will depend, is a sufficient consideration to uphold an agreement or contract in relation to such stock. Such information being concededly of great value is just as effective to take the case out of the statute of frauds as if a cash payment had then been made.

One who offers a reward for information is bound by his contract to the person who responds to his offer. The same rule applies with equal force where the information is proffered by one and accepted by another under a contract by him to carry certain stocks for the benefit and profit of the party imparting the information.

Where plaintiff, being in possession of valuable information in relation to a certain stock which he proposed to impart to defendant upon condition that if defendant should consider it sufficiently important to warrant his acting upon it he (defendant) should hold 5,000 shares of such stock at cost for plaintiff's account, and at his risk and subject to his orders, for a period of sixty or ninety days, to which defendant assented and thereupon plaintiff imparted said information which defendant accepted and acted upon, pronouncing it the best "point" he had heard of in a long time:

*Held,* that the moment the information was given and the transaction assented to by defendant it was an executed contract and the defendant bore the same relation to the plaintiff, in regard to this stock, as stock brokers ordinarily bear to the customers for whom they are carrying stocks.

The plaintiff became the owner and the defendant the pledgee of the stock, charged also with the further duty to continue to carry without margin until directed to sell as provided by the agreement.

The title to the stock (5,000 shares) was in the plaintiff and he was entitled to an immediate delivery at any time of the specific stock agreed to be

set apart and held by defendant for him, on tendering to the defendant the price agreed upon for the same, with accrued interest.

*Kings Special Term, June,* 1878.

THIS was a motion upon the minutes to set aside a verdict in favor of the defendant rendered by the jury by direction of the court and for a new trial.

The action was upon a promissory note made in March, 1875.

The sole defense was a counter-claim for an amount largely exceeding the amount of the note arising out of a joint trans-action between the parties in the stock of the Rock Island Railroad Company some years before the making of the note.

' The reply admitted the counter-claim, but alleged payment and satisfaction thereof through certain transactions between the parties in the common stock of the Chicago and North-western Railway Company in the winter and spring of 1873.

The reply alleged, and plaintiff's testimony tended to show, that it was agreed when the transaction in Rock Island stock was closed (the whole loss upon which was paid by Drew so that White became his debtor for one-half thereof) that the parties should endeavor to retrieve their loss by some future joint speculation in that or some other stock.

In February, 1872, White became possessed of valua-ble information in respect to an approaching contest for the control of the Chicago and Northwestern Railway Company, and also became satisfied that Drew had purchased, and was holding, a large amount of the common stock of that com-pany, a portion of which he was attempting to sell.

Being in possession of such information White called upon Drew, stated his belief as to the latter's position, and offered to communicate the information to him upon condi-tion that if Drew should consider it sufficiently important to warrant his acting upon it he would countermand his orders to sell the stock and hold 5,000 shares, at cost, for White's account, and at his risk and subject to his orders, for a period

White agt. Drew.

of sixty or ninety days for the purpose of making up his share of the loss on the Rock Island transaction.

Drew admitted that he held a large amount of the stock, assented to White's proposal and asked him to impart the information.

White, thereupon, told Drew what he had learned about two pools just being formed to buy large quantities of that particular stock, and that Drew pronounced the "point" the best he had heard of in a long time and immediately, with White's assistance, countermanded his outstanding orders to sell and kept his stock.

It was further agreed between the parties that if the stock should decline in price White should furnish a margin for the 5,000 shares to be carried for his account, and that if a profit should be realized on those shares it should go toward the payment of his indebtedness to Drew.

The price of the stock advanced upwards of eleven per cent within sixty days, and that a settlement was then had between the parties by which White's interest in the 5,000 shares was transferred to Drew in satisfaction of White's liability on account of the former speculation.

The defendant moved the court to direct a verdict in his favor for the excess of his counter-claim over plaintiff's claim, upon the grounds that the agreement set up in the reply was void under the statute against betting and gaming, and also under the statute of frauds.

The court submitted the case to the jury, but after they had failed to agree directed a verdict for the defendant as requested and reserved the points raised by the defendant's motion for consideration upon a motion to be made by plaintiff, upon the minutes, for a new trial.

*B. F. Blair*, for plaintiff.

*Alvin Bush* and *Freeman J. Fithian*, for defendant.

White agt. Drew.

PRATT, J. — As the cause of action alleged in the complaint and the counter-claim are respectively admitted by the answer and reply, and the only real subject of controversy is the alleged agreement and transaction thereunder set out in the last named pleading, it was deemed advisable, upon the failure of the jury to agree, in view of the important and novel legal questions involved, the fact that the jurors failed to agree upon a verdict and the heavy expense attending such a trial, to direct a verdict for the defendant for the excess of the counter-claim over the amount claimed by the plaintiff, in order that if, after full argument, I should conclude that the agreement set out in the reply is void, a new trial would be avoided, and if I should come to a contrary conclusion, the same result would follow as if the verdict had not been directed. It is clear, that if the evidence by the plaintiff in support of his reply, assuming it to be true, would not authorize a finding, that, as matter of law, would constitute a payment of defendant's counter-claim, in whole or in part, it was folly to submit the case to a jury, and the defendant is entitled to judgment upon the verdict so directed.

On the other hand, if from the evidence so given by the plaintiff, the jury might have drawn conclusions that would constitute a valid agreement, going to extinguish defendant's counter-claim, he is entitled to have the benefit of a jury trial upon the questions of fact involved.

There are two aspects, then, brought to view in this motion to set aside the verdict and for a new trial.

First, what conclusions of fact, would it be competent for a jury to draw from the evidence given by the plaintiff, and second, do such conclusions, as matters of law, constitute a valid defense to the defendant's counter-claim?

In order to consider the first question fairly it will be necessary to quote, somewhat largely from the testimony, aside from stating the undisputed facts of the case.

Prior to February, 1872, the plaintiff had become indebted to defendant in the sum of about $50,000, arising out of stock

transactions, which he claims defendant had agreed should be liquidated or worked out by future speculations. On the tenth of that month the plaintiff, having become possessed of certain information in regard to the probable rise in the market price of the shares of the capital stock of the North-western Railroad Company, had an interview with the defendant in which the following conversation took place:

The plaintiff states: " I told him that certain facts had come to my knowledge." " That feeling confident that if his position was what I thought it was we could both make a great deal of money out of it, and *before I would tell him what it was* I said to him that I should want him to promise me that when I named his position, named this stock and named what I thought he was (doing) upon it, to tell me first whether I was correct in my surmise as to his position and the next thing was whether, if when I told him the facts that had come within my knowledge, if he *and I both concurred in the view that it was going to advance the price of the stock*, that then he would allow me to take an interest of 5,000 shares in the stock that he held, if he held it, *to both of which preliminary to going into the facts, Mr. Drew assented* — I then told him," &c. Upon receiving the information defendant agreed to hold and carry for the plaintiff 5,000 shares at the price of seventy-four dollars per share of $100 each, at the same time pronouncing the information of great value and importance.

There can be no doubt of the sufficiency of the consideration. Reliable information as to facts upon which the future price of a stock will depend is perhaps the most valuable consideration that could be paid to an operator. In the possession of the plaintiff it would enable him to operate with success. When he imparted it to defendant the latter could do the same.

The knowledge of a fact cannot be called "mere words." The information communicated by a professional man has always been held a sufficient consideration to sustain assumpsit.

It has never been doubted that the one who offers a reward for information, is bound by his contract to the person who responds to his offer.

This information was concededly of great value and was just as effective to take the case out of the statute of frauds as if a cash payment had then been made.

The moment the information was given and the transaction assented to by defendant it was an executed contract and the defendant bore the same relation to the plaintiff, in regard to this stock, as stock brokers ordinarily bear to the customers for whom they are carrying stocks.

The plaintiff became the owner and the defendant the pledgee of the stock, charged also with the further duty to continue to carry, without margin, until directed to sell as provided by the agreement.

The title to the stock (5,000 shares) was in the plaintiff and he was entitled to an immediate delivery at any time of the specific stock agreed to be set apart and held by defendant for him on tendering to the defendant the price agreed upon for the same with accrued interest.

These views, if correct, render it unnecessary to discuss the objection that this transaction was a wager.

The stock advanced rapidly in price. When it had reached the price of about eighty-five dollars per share the plaintiff and defendant had an interview in which the plaintiff instructed the defendant to close the transaction in one of three ways, to which he readily assented.

The plaintiff had a right to assume, and he testifies that he did assume, that the transaction was closed and the profits applied in extinguishment of defendant's claim against him.

The fact that defendant subsequently said he had forgotten to sell the stock does not imply that he thereby proposed to continue to hold it for plaintiff, or that he then had it even. Neither does it follow that he had not adopted one of the other courses authorized, viz., taken the stock upon his own

account at the market price and credited plaintiff with the profits.

On the contrary, the fact that he did not tender the stock to the plaintiff nor sell it shows satisfactorily that he did elect to adopt the latter alternative.

The defendant had agreed to close the transaction in one of the ways directed by the plaintiff, and the plaintiff relied upon that agreement.

It seems to me clear that defendant is estopped from alleging that he did not carry out his agreement.

Furthermore, from the subsequent conversations and dealings between the parties a jury must be satisfied that defendant intended to charge himself with the stock. He acknowledged the extinguishment of the indebtedness by the profits of the transaction, to which plaintiff was entitled, at a time when the latter could have secured a result much more favorable to himself if defendant had not practically agreed that the stock was disposed of·in one of the methods directed.

Again, it does not appear that defendant ever afterwards claimed that plaintiff was the owner of the stock, or that he was continuing to carry it for him. It does, however, fairly appear that defendant, in consequence of having large amounts of the stock, did not desire the plaintiff's stock should be thrown suddenly upon the market, and therefore he might well have taken it himself to avoid that result.

Whether an actual entry was made in the books of account or elsewhere showing this disposition is immaterial.

It was doubtless defendant's intention to do so, and the intention was consummated by his having possession of, and exercising control over, the stock.

As he already had possession a formal delivery of the stock certificates to retransfer to him the title was unnecessary.

It follows, from these views, that the verdict must be set aside and new trial granted.