JAMES K. CROFUT *vs.* JACOB M. LAYTON, EXECUTOR, ET AL.

Third Judicial District, Bridgeport, April Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN AND HAMERSLEY, JS.

Prior to the organization of a joint stock corporation to continue the business which had been carried on by *C* and *K* as copartners, it was mutually agreed in writing between said partners, their respective sons (each of whom then had a valuable interest in the business of the firm), and three of their employees, who together were to constitute the seven stockholders of the corporation, that each father and son would retain during his lifetime the shares of capital stock to be issued to him, and at his death would bequeath the same to the family survivor, father or son as the case might be, who might then sell any portion of the stock so bequeathed to him, to any of the other stockholders then living. In regard to the stock to be issued to the three employees, the agreement provided that it should not be disposed of by them during their respective lives, and that upon the death of any one of them his stock should be sold by his executor or administrator to the surviving stockholders, in proportion to their respective holdings. Pursuant to this agreement the corporation was organized by the seven incorporators. Afterwards *C*, the father of the plaintiff died, leaving a will in which he bequeathed his stock in the corporation to the plaintiff, upon the express condition that the latter should pay the widow of *C* an annuity of $500 a year for the term of ten years. The stock of the company had no fixed market value and none of it had been sold. In a suit brought by *C's* son to compel the transfer to him of his father's stock, it was *held*:—

1. That *C's* agreement to bequeath his stock to his son, the plaintiff, was upon a valuable and adequate consideration.

2. That such agreement plainly called for an absolute and unconditional
   bequest, which was not fulfilled by the terms of the will.
3. That it was immaterial whether the plaintiff had, at the time of his
   father's decease, made a will giving him his, the plaintiff's, share; as
   a breach of the mutual agreement could not occur on the part of either,
   until his death.
Section 623 of the General Statutes which gives the wife a share of the
   property of her deceased husband, does not prevent him during his life
   from disposing of his property, or incumbering it by lawful agreements.

[Argued April 28th—decided June 25th, 1896.]

SUIT to compel the transfer and conveyance by the de-
fendants of certain shares of stock, brought to the Superior
Court in Fairfield County and tried to the court, *George W.
Wheeler, J.;* facts found and judgment rendered for the
plaintiff, and appeal by the defendants for alleged errors in
the rulings of the court.   *No error.*

Jacob M. Layton is the executor of the will of Andrew J.
Crofut.   The plaintiff James K. Crofut, is the son of the tes-
tator, the defendant Harriet R. Crofut is his widow, the de-
fendant Grace Mathewson is his daughter; and these three
are his only heirs at law and next of kin, and the only lega-
tees under the will.   Grace Mathewson, and her husband
Edwin H. Mathewson, joined as defendant, defaulted, and
the only defendants who contested the action are the widow
and the executor.

The complaint contains eight paragraphs, alleging that:
1. Andrew J. Crofut, for a good and valuable consideration,
by an instrument in writing and under seal, agreed to be-
queath by will to the plaintiff all of his holdings of the capi-
tal stock of the Crofut & Knapp Company, a joint stock
corporation under the laws of this State.   2. Said agreement
and the statements therein contained are made a part of the
complaint.   3. Andrew J. Crofut died in November, 1893,
leaving a will which has been duly probated, by which Jacob
M. Layton is executor.   4. Andrew J. Crofut at the time of
his death owned 306 shares of the capital stock of said Cro-
fut & Knapp Company, being the same stock referred to in
said agreement as owned by him.   5. The said testator did

not bequeath to the plaintiff said stock as provided in said agreement. 6. Said stock has no fixed market value, and no sales thereof have at any time been made. 7. Harriet R. Crofut and Grace Mathewson are the only heirs at law and next of kin of the testator, and are the only legatees under his said will. 8. The plaintiff has no adequate remedy at law.

No demurrer was filed. The answer admitted making the instrument in writing and under seal, as alleged in the first and second paragraphs, but denied that the agreement to bequeath, therein contained, was for a good and valuable consideration; denied the fifth paragraph, and admitted the allegations of paragraphs 2, 3, 4, 6, 7 and 8. A second defense alleged that the plaintiff had presented no claim against the estate of his father within the time limited by law, and that this action was thereby barred; no question in respect to this defense is raised by the appeal.

The trial court found the issues for the plaintiff, and ordered the executor to transfer unconditionally the stock standing in the name of A. J. Crofut at his death, to the plaintiff. The judgment specially sets forth the facts on which it is founded. These facts include, in addition to the facts admitted by the pleadings, the full text of the agreement, and of the will and codicil of Andrew J. Crofut as probated, with the following facts: The plaintiff was married in 1884, and remained so until after the date of the agreement; the plaintiff had little or no property at the date of the agreement, except an interest in the business of Crofut & Knapp referred to therein; the testator did not bequeath his stock to the plaintiff, unless the bequest contained in his will and codicil was a compliance with the terms of said agreement; no evidence was offered on the trial of the amount or value of the estate of the testator; no evidence was offered whether or not the plaintiff had bequeathed to his father the stock referred to in the agreement.

The defendants appealed from this judgment, and the errors claimed in the reasons of appeal consist in the alleged insufficiency of the facts specially set forth to support the judgment.

*Charles E. Perkins* and *Morris W. Seymour*, with whom were *Howard H. Knapp* and *John H. Light*, for the appellants (defendants).

The plaintiff is attempting to enforce the specific performance of a contract without consideration. In reference to the stock of the plaintiff's father, after the latter's death, such stock was a pure gift to the plaintiff, and no consideration passed from the plaintiff to his father for such stock. Moreover, there was no meeting of the minds of the parties. There can be no question but that Andrew J. Crofut understood the agreement as claimed by the defendants. A contract will not be specifically enforced in such a way as to make it illegal. *Platt* v. *Banks*, 46 Conn. 478. According to the plaintiff's construction of this contract, he had agreed to absolutely cut his wife off by will, from all participation in his estate, although this was in absolute defiance of the statute of this State, which gave to his wife a statutory right to a part of his estate, which he could not defeat by deed or will. Applications for specific performance are addressed to the discretion of the court, and will not be granted unless the contract is made according to the requirements of the law, and is fair, equitable, reasonable, certain, mutual, on good consideration, consistent with policy, and free from fraud, surprise or mistake. *Lear* v. *Choutian*, 23 Ill. 39 ; *Morris* v. *Lewis*, 33 Ala. 54; *Quinn* v. *Roath*, 37 Conn. 16 ; *Platt* v. *Stonington Savings Bank*, 46 id. 478 ; *Taylor* v. *Atwood*, 47 id. 498 ; *Grant* v. *Grant*, 63 id. 530.

*John H. Perry*, with whom was *Russell Frost*, for the appellee (plaintiff).

" Where one contracts upon valuable consideration to execute a will after a certain tenor, the agreement is binding upon his death, and may be specifically enforced against his representatives and his estate." Schouler on Wills, § 454 ; 3 Parsons on Con. 12th ed. s. pp. 406–7 ; Waterman on Spec. Perform. § 41; 22 Amer. & Eng. Ency. of Law, 974 and note ; *Fortesque* v. *Hannah*, 19 Ves. 66 ; *Jones* v. *Martin*, 3 Ans. 832 (quoted at length in 5 Ves. 266, n.), a leading case;

*Bolman* v. *Overall*, 80 Ala. 451 ; *Rivers* v. *Ex'rs of Rivers*, 3 Desaussure (So. Car. Eq.), 190 ; *Gupton* v. *Gupton*, 47 Mo. 46. An agreement to transfer capital stock is a peculiarly appropriate agreement for specific performance, and especially when, as in this case, the stock has no fixed market value, and sales of it are infrequent or unknown. *White* v. *Schuyler*, 1 Abb. Pr. N. S. 300 ; *Phillips* v. *Barger*, 2 Barb. 608 ; *Duncuft* v. *Albrecht*, 12 Sim. 189 ; approved *Cheale* v. *Kenward*, 3 De Gex & J. 27 ; *Adams* v. *Messinger*, 147 Mass. 185 ; *Todd* v. *Taft*, 7 Allen, 371 ; *Treas'r* v. *Com. Coal & Mining Co.*, 23 Cal. 391 ; 22 Amer. & Eng. Ency. of Law, 993 and note ; Waterman on Specif. Perform. § 19 ; Fry on Specif. Perform. 13, note ; *Corbin* v. *Tracy*, 34 Conn. 327 ; *Colt* v. *Colt*, 32 id. 451. A husband may give away the last cent he owned before his death, and his widow has no remedy. He may incumber his property in any way he chooses, and she takes her part subject to the incumbrance. He may make any contract with reference to it he sees fit, and that contract must be carried out, and the mere fact that it will deprive her of everything is no defense. The agreement, properly construed, calls for an untrammeled legacy of 306 shares of stock, and not for a bequest of the option to purchase it on the terms named in the codicil.

HAMERSLEY, J. The issues presented for trial by the pleadings involve two questions : Was there a valid consideration for the agreement made ; has the agreement been fulfilled?

*First.* Was there a good and valuable consideration for the alleged promise, aside from any consideration implied by its inclusion in an instrument under seal? The main facts from which such consideration may be implied, are the statements contained in the instrument itself. That instrument is a peculiar one, and was made under the following circumstances :—

Andrew J. Crofut and James H. Knapp were partners who had built up a manufacturing business under the firm name of Crofut & Knapp. Each had a son who for some

time past had been connected with the partnership, not as partner nor as salaried employee, but receiving for his services certain interests in the profits of the firm. Each son had a valuable interest in the business of the firm. The firm had three employees who were desirous of purchasing an interest in the business. The partners wished to change the partnership into a joint stock corporation with a capital stock of $100,000, of which $76,100 should be represented by the assets and good will of the firm, and $23,900 by cash paid in. They also wished to perpetuate the firm name by the corporate name, and to secure the control of the corporation for as long a time as possible in the two Crofuts and the two Knapps and their survivors; to pay off the interest that Crofut Jr. and Knapp Jr. owned in the business of the firm, by the issue to them of stock fairly representing the value of that interest, and to secure their permanent assistance in the control of the corporation; to satisfy the three employees by issuing stock to them at a fair price, to secure during life their services to the corporation and to prevent their ever disposing of the stock to any except the other stockholders; to provide in aid of the scheme and for the respective interests of the Knapps and Crofuts, that each father and son should agree between themselves that the survivor should eventually have all the stock apportioned upon the organization of the company to both.

These purposes were embodied and carried out in the sealed instrument executed by the Crofuts, the two Knapps and their employees. The provisions are somewhat complicated, but the net results are as follows: The Crofut & Knapp Company is organized with a capital stock of $100,000, divided into 1,000 shares of $100 each. This capital consists of the assets and good will of the firm of Crofut & Knapp, and $23,900 in cash; 306 shares are apportioned to A. J. Crofut in full satisfaction of his partnership interest; 105 shares to J. K. Crofut in payment of his interest in the business of the firm; 306 shares to J. H. Knapp, which is an overpayment of his partnership interest made good by a cash payment to the corporation of $10,000; 105 shares to P. N.

Knapp (the son), which is an overpayment of his interest in the firm business made good by a cash payment to the corporation of $300 ; 178 shares to the three employees for $13,600 paid in cash, being at the rate of $76 and $77 per share. Each of the stockholders is bound during his life not to sell his stock to any one ; each of the three employees covenants that upon his death his stock shall be sold at its market value to the other stockholders.   The special agreement between the two Knapps and the two Crofuts is contained in the following provision : " Each of said members of the two families now interested in the copartnership of Crofut & Knapp, agree not to sell their stock in said new corporation during their lifetime, and further agree by will to bequeath their holdings of stock to the other members of the same family then living, that is, the said A. J. Crofut and J. K. Crofut are to bequeath by will their respective holdings to each other ; and the said James H. Knapp and P. N. Knapp are likewise to bequeath their respective holdings to each other ; but the surviving members thus taking such stock as legatees may if they so desire, sell any portion of the stock so bequeathed to them to any of the stockholders then living."

Here is an agreement on the part of A. J. Crofut, plain, direct, void of doubt and any suggestion of ambiguity, to hold during his life the 306 shares of stock apportioned to him, and to bequeath them by will to his son ; and a similar agreement on the part of J. K. Crofut.  It is claimed that the evident purpose of the whole arrangement was to continue the control of the stock in the Crofut and Knapp families, and that such apparent purpose alters the plain meaning of the language used, so that the agreement is not to hold and bequeath a specific number of shares, but to so act in respect to the shares that the two families shall remain in substantial control of the stock.  In other words, that by force of the general purpose the specific covenant not to sell the stock during life, means merely an obligation not to sell so much of the stock as to interfere with the substantial control of the two families ; and the specific promise to bequeath 306

shares, means merely a promise to bequeath such portion of the shares on such terms and conditions as, if accepted by the legatee, will continue such substantial control. This claim is wholly unfounded. Undoubtedly one purpose inducing this transaction was to keep the substantial control of the stock in those members of the two families connected with the old firm; but to give complete effect to that purpose it was deemed necessary to make a specific and binding agreement by which whether father or son should first die, the survivor should have and hold his stock, even if unable to buy it or any portion of it. Such specific agreement cannot be held nugatory or uncertain, because one purpose which induced it might possibly be accomplished through a different agreement.

These facts show that the agreement was upon a good and valuable consideration. Andrew J. Crofut (whether his motives are wholly or partially selfish or disinterested is immaterial) wishes his son to sell out his interest in the firm business for 105 shares of stock in the new corporation, to hold that stock during life, and to bequeath it by will to his father; and offers, in consideration of his making such purchase of stock and assuming these onerous obligations, to himself purchase and hold during life 306 shares of the same stock, and to bequeath it by will to his son. Such considerations are amply sufficient to support the promises. The adequacy of the consideration is equally clear. So long as the consideration is adequate, it is unnecessary to show whether the agreement was more to the advantage of the father or son. Indeed from the nature of the transaction it is impossible to affirm on which side the advantage lies. If the son's stock is less than that of the father's, it is nevertheless his all, he is deprived during life from using his property in any other business, he is deprived from leaving it to the natural objects of his bounty, and bound to bequeath it to his father who would not be his heir or next of kin; while the father's stock is but a portion of his property, how large or small a portion does not appear, and the obligation to bequeath it to his son is a promise to give it to one of those who without a

will would inherit his whole property, and does not prevent him from equalizing the division of his estate between his children, by depriving the son by will of any interest in the rest of his property. It certainly cannot be assumed that the advantage is on the side of the son. There is a good and valuable consideration for the father's promise, and there is nothing in the record to prove that the contract is not fair, equitable, reasonable, certain and mutual.

*Second.* Has A. J. Crofut's promise to bequeath been fulfilled?

Mr. Crofut's will was made prior to the change of the partnership to a corporation. He gave to his wife Harriet R. Crofut, certain policies of insurance amounting to nearly $20,000, some other personal property, and some land; he also gave her $500 a year, to be paid her in equal quarterly payments, for the period of ten years after his death, if she lived so long, out of his share in the copartnership of Crofut & Knapp; to his daughter Grace certain personal property; to his son, the plaintiff, his whole interest in the copartnership, "in the hope that said copartnership, in the building up of which my life has been chiefly spent, may continue after my decease the same as before," and also some other personal property. The gift of interest in the partnership was upon the express condition that his son should pay his unsecured debts and the expenses of settling his estate, and also that he should pay the wife the annuity of $500 a year. He gave the residue of his estate, real and personal, in equal shares to his wife and two children. The codicil, which was executed some five months after the agreement in question and two months before the testator's death, referred to the gift in his will of his share in the partnership to his son, and the change of the copartnership to a corporation, and gave to his son, "in order to insure the fulfillment of my said purpose as expressed in said will," all the shares of capital stock of the Crofut & Knapp Company which he might own at his death, " upon the express condition only that he shall pay to my wife Harriet R. Crofut " an annuity of $500 in half yearly payments of $250, the first payment

to be made in full in the month of January following his decease, and so half yearly for ten years if she live so long. No allusion is made in the codicil to the agreement in question.

The defendants claim that the language used in the will. and codicil show that A. J. Crofut did not intend, in executing the agreement, to bind himself to hold the 306 shares during his life and bequeath them to his son, and therefore, the minds of the parties did not meet and there was no agreement. It is difficult to regard this claim as seriously made ; it certainly has no foundation. The codicil was not a fulfillment of A. J. Crofut's agreement, which plainly calls for an absolute and unconditional bequest. The requirement of a payment of $250 each half year is the same in legal effect as if that sum was multiplied by 100 ; the condition violates both the obligation and purpose of the agreement. It is immaterial whether Mr. Crofut in framing this codicil intended merely to express a wish in such terms as might induce his son to acquiesce, or acted in ignorance or willful violation of his contract; however this may be, he has not bequeathed the shares as agreed.

We do not think that the defendants are in a position under the pleadings, to raise the other questions suggested in the reasons of appeal. They did not demur to the complaint. They admitted every fact alleged except the two facts which their answer put in issue, namely, the sufficiency of the consideration for the agreement, and the failure to fulfill the agreement. These issues being properly decided against them, they cannot now raise any questions of law which might have been raised by a demurrer which was not filed, or by a special defense which was not alleged. It may be urged, however, that any of the facts specially set forth in the judgment as the facts on which it is founded, claimed to indicate the invalidity of the agreement, raise questions of law on the record proper to be considered on this appeal. If this is true, the questions so raised are of no consequence. The fact that the plaintiff was married in 1884, and that his wife, living at the execution of the agreement, would be entitled if she sur-

vived him, to a portion of his estate under the law of 1877, is clearly immaterial.   The statute gives the wife a share of the property owned by the husband at his decease; it does not prevent him during his life from disposing of his property, or incumbering it by lawful agreements.   It was also immaterial whether or not the plaintiff had bequeathed the shares apportioned to him, to his father.   The fulfillment of the mutual agreement between father and son, from its very nature could not be complete during their joint lives, and a breach by either could not be affirmed until his death.

The facts specially found plainly support a decree for specific performance.   It is difficult to see how any other remedy could be adequate in the case of breach of a promise to transfer shares of stock which has no fixed market value.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.