**Lattavo v. Green Acres, Inc.**

---

*Nathan Routman*, for plaintiff.

*William J. Joyce* and *Herman M. Rodgers*, for defendant.

STRANAHAN, P. J., April 8, 1969.—Plaintiff has commenced a suit in assumpsit against the various defendants in which he alleges that he performed certain work as a real estate developer under a contract orally made with defendant, Chadderton, on or about the latter part of July, 1966. In December of 1966, and prior to the completion of his work, plaintiff was discharged by Edward A. Chadderton.

Under the terms of this alleged contract the plaintiff was to receive 25 percent of the stock in the various named defendant corporations, in return for his development of certain lands owned by the corporations. Defendants, Chadderton and Elliott, are named individually, because it is plaintiff's contention that they agreed to individual liability.

Plaintiff also sets forth an alternative cause of action in his pleadings in which he alleges that the fair and reasonable value of the services performed by him is $100,000 and in the event he cannot recover under the terms of the oral contract that he then is entitled to recover this amount as the value of his services.

Responsive pleadings have been filed and interrogatories and depositions taken. Defendants have filed a motion for a summary judgment and the court must determine whether there are certain matters which can now be decided in this litigation. While it is true that a summary judgment can only be entered on the pleadings and depositions in a case that is clear and free from doubt, the court does have the right to make an order specifying the facts that ap-

pear without substantial controversy and direct such further proceedings in the action as are just: Pennsylvania Rule of Civil Procedure 1035. This is an appropriate case for the use of the summary judgment.

One of the principal matters in controversy is whether or not the statute of frauds is applicable here, and would therefore bar plaintiff from recovering the 25 percent of the stock which he alleges is due him as the result of his contract with Chadderton and Elliott, individually, and with the corporations.

Defendants point out that under the Uniform Commercial Code of October 2, 1959, P. L. 1023, sec. 8-319, 12A PS §8-319, it provides that an oral contract for the sale of securities is not enforceable by way of action or defense unless it falls under one of the enumerated exceptions.

There are several sections of this statute which create situations which would take a transaction out of the statute of frauds, but it is defendants' contention that none of these situations exist.

In the Uniform Commercial Code, section 2-106, 12A PS §2-106, the following definition appears:

"In this Article unless the context otherwise requires 'contract' and 'agreement' are limited to those related to the present or future sale of goods. 'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time. A 'sale' consists in the passing of title from the seller to the buyer for a price. A present sale means a sale which is accomplished by the making of the contract."

Plaintiff contends that this is not a contract for sale, but rather this is an employment contract and that therefore the transaction is excluded from the statute of frauds.

The contract alleged by plaintiff is unusual in that it does have some aspects of an employment contract, but the fact remains that it is also a contract for the

sale of securities, payment for which is to be provided by the services performed by plaintiff.

In determining the intent of the parties as to what type of contract this was, it is interesting to consider the testimony of Arthur Lattavo on page 30 of his deposition. The following appears:

"Q. Was there ever any discussion before that with reference to your being paid on a cash basis?

"A. No, sir. No, sir, because my opening deal with Ed Chadderton was that I didn't want no cash. I didn't want to receive no compensation other than a piece of the whole deal—a portion of it just like we agree upon. I didn't want no salary. That was spelled out specifically so. I will take mine in a part of the deal of the whole development, golf course and all."

From this it appears that the plaintiff, Lattavo, did not consider himself an employe of Chadderton, but rather considered that he was obtaining a portion of the "whole deal." The portion was to be 25 percent of the stock in the various corporations, and the purchase of this stock was to be paid by the rendition of services in developing the land.

We believe that the contract alleged by plaintiff comes under section 8-319 of the Uniform Commercial Code, supra, and is unenforceable because it violates the statute of frauds.

A search of the Pennsylvania cases does not reveal any appellate court decisions that shed much light on this subject. However, the case of Kessler v. M. J. Greene Co., Inc., 39 D. & C. 2d 717, deals with a situation that is somewhat analogous to the present case. In that case plaintiff endeavored to recover on an oral agreement allegedly made by defendant to grant plaintiff an option to buy a certain quantity of defendant's stock in return for plaintiff's services in obtaining a broker. The court sustained defendant's preliminary objection on the ground that the agree-

ment was unenforceable under section 8-319 of the Uniform Commercial Code.

Plaintiff further contends that if the statute of frauds as set forth in section 8-319 of the Uniform Commercial Code is applicable then his case comes under an exception appearing in (b) which provides:

"delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment."

Since Arthur Lattavo has performed a substantial amount of services under his agreement with defendants he now contends that such service amounts to payment by him and therefore the contract is enforceable either in its entirety or to the extent of the payment.

It may be that the Sales Act of 1915 which preceded the Uniform Commercial Code did provide that part payment would take a contract out of the statute of frauds. Under the Commercial Code, however, part payment takes the case out of the statute of frauds only to the extent for which payment has been made. If the contract were divisible then it might be that plaintiff would be correct in his argument that the court should enforce the contract to the extent of payment. However, it is impossible for this court to determine, even if it accepts all of plaintiff's contentions as true, what portion of the contract has been completed and what proportion of the stock could be allocated to plaintiff for that work which he has done. We believe that the contract, as the plaintiff's testimony alleges existed, was an indivisible contract dealing with a single object, and therefore the court cannot apply section 8-319 (b).

Again a review of the Pennsylvania cases does not prove too helpful. In Williamson v. Martz, 11 D. & C. 2d 33, the court considers a problem somewhat

similar to the present one and arrives at a conclusion which would be similar to the result reached by this court.

We hold the statute of frauds, section 8-319, is applicable here and defendant cannot recover under his oral contract.

Since such a recovery cannot be made we further rule that plaintiff must resort to a suit for damages in the amount of the value of the services performed by him: Redditt v. Horn, 361 Pa. 533.

We have reviewed the depositions in this case and the interrogatories, and this court is of the opinion that defendant, James A. Elliott, has done nothing that would subject him to individual liability. Nowhere does it appear that Elliott agreed to accept individual responsibility for payment of any of the services performed by plaintiff.

For example the following appears on page 16 of the deposition of Arthur Lattavo:

"A. Oh, we were talking back and forth ordinary talk about what was going to be and lots of stuff but nothing definite between Jim and I. It was Ed that made me the deal".

At page 85 of the same deposition:

"Q. Did Mr. Elliott ever say anything to you that would indicate that he was incurring a personal liability to you?

"A. Oh, I don't recall him saying that he was incurring that. I don't recall him guaranteeing me anything.

"Q. He didn't even guarantee you any stock did he?

"A. No. He didn't guarantee me. Mr. Chadderton was going to give me the stock."

It is true that Elliott attended certain meetings at which time plaintiff and Chadderton were present, but there is no indication Elliott did anything more

than participate in the general corporation business. There is no evidence indicating that personal liability on the part of James Elliott was intended by the parties. For this reason we grant the summary judgment requested by James A. Elliott and direct that judgment in his favor be entered as it pertains to his individual liability to plaintiff, Arthur Lattavo.

In the motion for a summary judgment Edward Chadderton also requests that judgment be entered in favor of him and against plaintiff, thereby relieving him from individual liability in this case.

In view of the fact that a summary judgment cannot be entered unless the case is free and clear from doubt we are unable to grant this request.

A review of the testimony indicates that there is some evidence that Arthur Lattavo intended to look to Edward Chadderton for payment of his services. Admittedly this payment was to be made by transferring 25 percent of the stock in various corporations to Lattavo, but the fact remains that Lattavo testified that it was Chadderton who was going to effect this transfer.

In the deposition of Arthur Lattavo, page 85, the following appears:

"Q. He didn't even guarantee you any stock, did he? (This is referring to James Elliott.)

"A. No. He didn't guarantee me. Mr. Chadderton was going to give me the stock.

"Q. Did he tell you that he was going to give you the stock that he owned?

"A. He—no.

"Q. Or that he was going to have the corporation issue the stock?

"A. Who?

"Q. Mr. Chadderton.

"A. I don't know where he was going to get the stock. He just told me he was going to give it to me."

Further on page 86:

"Q. He didn't say he was going to transfer his stock?

"A. I didn't say he said he was going to transfer his stock at all. He said he was going to get me the 25 percent of the stock. He was going to give it to me.

"Q. He was going to cause the corporation to do it?

"A. Or cause the corporation to do it.

"Q. Is that your theory?

"A. Yes.

"Q. That he would cause the corporation to issue the stock?

"A. Yes.

"Q. And that was his undertaking according to your theory, is that it?

"A. Yes."

In the case of Weimer v. Bockel, 128 Pa. Superior Ct. 385, plaintiffs were law partners who brought a suit in assumpsit against defendant, Bockel, for legal services. The legal services were performed for and on behalf of Majestic Coal Company, of which Bockel was vice president. The testimony indicates that Bockel owned 85 percent of the stock of Majestic Coal Company, and plaintiffs contended that when they agreed to perform the legal services they were hired by Bockel, and it was their understanding that they would look to him for payment. A verdict was returned against Bockel and this was affirmed by the Superior Court. It was Bockel's contention that plaintiffs were aware of the fact that the corporation existed and that the work was to be done for the corporation. The court stated, page 392:

"If the testimony of the plaintiffs is to be believed, their engagement was a personal employment by the defendant in regard to a corporation, which might be regarded as a one-man corporation, and which was

dealt with by the defendant as his own personal business. It was unnecessary for one in dealing with the officer of a corporation, who deals with the transaction as a purely personal one, to give notice to the officer that the credit is extended to him exclusively, but such fact may be inferred from all of the circumstances."

It may be that at the time of trial the court will make a determination, as a matter of law, that Chadderton is not subject to individual liability. On the other hand it could well be that this is a jury question. Such being the case the court cannot decide this question at the present time.

## ORDER

And now, April 8, 1969, in compliance with Pa. R. C. P. 1035 (c), it is ordered that judgment is entered in favor of James A. Elliott, and against plaintiff, Arthur Lattavo, thereby relieving James A. Elliott of any individual liability in this case. It is further ordered that the statute of frauds as set forth in section 8-319 of the Uniform Commercial Code shall prevent plaintiff from producing evidence that a contract was entered into between him and defendants, whereby plaintiff was to receive 25 percent of the stock in defendant corporations in return for services performed. This does not mean that plaintiff is precluded from proceeding to establish damages in the amount of the value of the services performed by him or from proceeding on a theory of quantum meruit.

The motion by defendants with the exception of James A. Elliott that a summary judgment be entered in their favor and against plaintiff thereby relieving them of liability in this case is refused. It is further ordered that exceptions are granted to all parties from the ruling of this court.