Andrew J. Di Paola, J.
The plaintiffs, Scarpinato and Mendis, seek specific performance of a stock option allegedly granted to them by the defendant National Patent Development Corp. The complaint is dismissed after trial.
The plaintiffs were the sole stockholders, and officers and directors of Dural International Corp. Their business was the research and development and manufacture and distribution of construction materials. National Patent had a wholly.owned subsidiary, Hydron Systems, Inc., among whose products were hydrophilic polymers used in connection with building and road construction materials. On February 11, 1971, the plaintiffs, Dural and National Patent, entered into a “ secrecy agreement ” to protect the confidentiality of information to be given by defendant to the other parties to assist in their evaluation and feasibility studies of the products above referred to. It was the plaintiffs’ purpose ultimately to be engaged as distributors of the Hydron products.
There were conversations between the parties looking to a continuance and expansion of their association. These were reduced to a proposed agreement on the letterhead of Hydron Systems, Inc., to the plaintiffs without reference to Dural which *96 stated at its outset: “ This letter is to set forth the-agreements between each of you and (i) Hydron Systems, Inc. (the 1 Company ’) pursuant to which you each agree to act as a Consultant for the Company and the Company has agreed to pay you consulting fees and (ii) National Patent Development Corporation (NPDC) pursuant to which NPDC grants each of you options to purchase Common Stock of NPDC in consideration for your entering into the aforesaid agreement with the Company, a wholly-owned subsidiary of NPDC, and the Distribution Agreement, of even date herewith, in each case on the terms and conditions set forth below.”
The proposed retention of the plaintiffs as independent com tractors, as consultants, was for a term of six months ending February 28, 1972 at a monthly fee to each plaintiff of $1,500. It was then provided: “ 2. NPDC in consideration for your undertaking the foregoing Consultant’s duties for the Company * * * and for entering into the Distribution Agreement referred to above, hereby grants each of you an option to acquire 1500 shares of Common Stock, Class A, of NPDC at a purchase price of $70.75 per share, the fair market value of such stock on the date hereof.” The right to exercise the option was to “ accrue over the next five years on December 31 of each such year at the rate of 300 shares per year”. By the terms of the proposal the options were to expire on December 31, 1976, “ or on such earlier date as the aforesaid Distribution Agreement may be terminated pursuant to its terms.” Any possibility that the plaintiffs might be deemed agents of or authorized to act in behalf of National Patent was negatived by the statement “you shall have no rights as an employee or representative of NPDC whatsoever.” It was then pro,vided that “ [i]f the foregoing is in accordance with your understanding of the arrangements between each of you and the Company and NPDC, respectively, would you please sign and return the enclosed copies of this letter ”. The letter was never executed in behalf of either Hydron or NPDC and was not signed by the plaintiffs until February, 1972, on the eve of or after the termination of the consulting agreement. The Distribution Agreement was not only not signed by any of the parties to this litigation or by NPDC, but it is apparent on its face from the numerous incompleted parts thereof and from the testimony that it was not an agreement fully inte-/ grating the conversations of the parties named therein.
The plaintiffs’ theory is that they had a full agreement with NPDC which was oral but whose terms are evidenced by the *97 above-summarized proposed letter agreement of September 1, 1971, and the incomplete Distribution Agreement, as supplemented by oral conversations and minus certain parts of the latter agreement. They also urge that their performance of the consultant’s agreement, payment under which they received, takes the case out of any applicable Statute of Frauds.
In the first place the plaintiffs fail because assuming the existence of an agreement containing an option to purchase stock it is unenforceable since “ [a] contract for the sale of! securities is not enforceable by way of action or defense unless (a) there is some writing signed by the party against whom enforcement is sought ”. (Uniform Commercial Code, § 8-319.), The recent case of Bingham v. Wells, Rich, Greene, Inc. (34 A D 2d 924) held that a portion of an employment agreement which involved a transfer of title to shares of stock for a price is a sale of securities within the purview of section 8-319 and not enforceable without the requisite writing. Despite plaintiffs’ argument that the proposition was stated as a dictum because the court there denied defendant’s motion for summary judgment, it plainly stated that if the plaintiff could hot establish by disclosure proceedings ‘1 the existence of a ■writing approving or confirming the' agreement to sell the stock and approval thereof by defendant’s board of directors * * * he will have failed to establish a good cause of action and defendant should be permitted to renew its application for summary judgment.” This is more than mere obiter. (Cf. Matter of Broderick v. City of New York, 295 N. Y. 363, 368, 369; Matter of Goodwin v. State Tax Comm., 286 App. Div. 694, 698; Matter of Davlee Constr. Corp. v. Brooks, 26 Misc 2d 240, 245.)
The plaintiffs have failed to overcome another hurdle. Thé defendant is a Delaware corporation. Under the Delaware Code (tit. 8, § 157) corporations incorporated there “ may create and issue * * * rights or options entitling the holders thereof to purchase from the corporation any shares of its capital stock * * * such rights or options to be evidenced by or in such instrument or instruments as shall be approved by the bóard of directors.” There is neither allegation nor proof that the NPDC board of directors ever considered or approved the options relied upon by plaintiffs. Furthermore, it is admitted that NPDC “is duly authorized to transact-business in the State of New York ” which makes the Business Corporation Law application, section 103 (subd. [a]) of the Business Corporation Law. Section 505 (subd. [a]) of that *98 law permits the creation and issue of “ rights or options entitling the holders thereof to purchase from the corporation [shares] * * * upon such consideration, terms and conditions as may be fixed by the board ”. The plaintiffs have failed to sustain, their burden in this, respect. (See, also, Goldenberg v. Bartell Broadcasting Corp., 47 Misc 2d 105; Business Corporation Law, § 504.)
This disposes of the case, but were it necessary to do so, the court would find that there was no intention on NPDC’s part to be bound by any oral agreement (cf. Dietz v. Farish, 79 N. Y. 520, 523).
The complaint must, therefore, be dismissed, with costs and disbursements awarded to the defendant. AH motions on which decision was reserved at trial- are resolved in conformity herewith. '