DONALD W. BURNS *v.* HARRY J. GOULD

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and MACDONALD, JS.

Argued October 6, 1976—decision released January 11, 1977

*Robert K. Lesser,* for the appellant (defendant).

*A. Reynolds Gordon,* with whom was *Arthur A. Hiller,* for the appellee (plaintiff).

LOISELLE, J.   The plaintiff, Donald W. Burns, and the defendant, Harry J. Gould, developed a convalescent home in Newtown known as Buckingham Gardens, hereinafter Buckingham.  They formed a corporation, and the plaintiff received 25 percent of its stock and an option to buy 24 percent more from the defendant for $12,000.  In 1967, the defendant formed a second corporation, Bentley Gardens, Inc., hereinafter Bentley, to develop a nursing home in West Haven, but none of its stock was issued to the plaintiff.  The plaintiff alleged that the parties had an oral agreement concerning the second corporation.  According to this alleged agreement he was to receive the same percentage of ownership—25 percent immediately and an option for an additional 24 percent for $12,000—in exchange for his services in developing the nursing home.  The plaintiff sought specific performance and $300,000 damages.  The defendant denied having made such an agreement and entered a special defense of failure of consideration if such an agreement existed.

Certain issues of fact were tried to the jury with the aid of interrogatories.  The jury found that there was an oral agreement as alleged by the plaintiff, that he had given consideration and had performed on his part, and that the defendant had breached the agreement by preventing the plaintiff from performing.[1]

---

[1] The defendant claims that it was error for the court to deny his motion for trial solely to the court.  Because the plaintiff's primary claim was for specific performance, and the claim of damages was incidental, no evidence of damages being introduced, the action was one in equity.  Such a case is not of right triable by jury, but the court, in its discretion, may submit factual issues to the jury, as the court did here.  *LaFrance* v. *LaFrance*, 127 Conn. 149, 153, 14 A.2d 739; see Practice Book § 243; *Dick* v. *Dick*, 167 Conn. 210, 222, 355 A.2d 110.

The court additionally found as facts that "Burns was employed by Gould to lend his expertise in the nursing home field towards the planning, construction, supervising and managing" of Bentley, and that without his help the defendant could not have successfully developed the project. The plaintiff, in addition to stock and the option for more stock, was to receive $200 per week and the use of a car, and would not have agreed to the deal unless he was to receive all the items. The consideration for the 24 percent option was not merely the $12,000 cash, but also Burns' services. The stock had no fixed market value. The Bentley deal was based on the Buckingham agreement and the Bentley negotiations contained express reference to the Buckingham terms. Under the plan, Bentley was to be owned solely by the plaintiff and the defendant. After the suit was brought, the defendant admitted that he and his wife formed a second corporation, Terrace Corporation, hereinafter Terrace, to lease the nursing home from Bentley and to operate it, and that the two corporations together performed the functions originally contemplated for Bentley.

The court concluded that the plaintiff substantially performed his part of the agreement and that the defendant wrongfully prevented him, by discharge, from completing performance. The court made no finding as to the exact services to be performed by the plaintiff, the term of his employment, or what portions of those services were actually performed by the plaintiff. It concluded that the parties intended the entire consideration to be the essence of the contract, and that the services rendered and to be rendered by the plaintiff were inextricably interwoven with the possible require-

ment of the $12,000 payment for the stock option. It found that the defendant's obligation to transfer stock applied to both Bentley and Terrace. It found that the contract did not involve the sale of land or the sale of securities at a stated or defined price, but was an employment contract.

The court granted specific performance, ordering the defendant to transfer to the plaintiff 25 percent of the stock of Bentley and Terrace, and to put another 24 percent of the stock of both corporations in escrow for six months, to be transferred to the plaintiff if he tendered $12,000. It further ordered the defendant, if either corporation should issue more stock, to transfer 25 percent, or, if the option for the additional 24 percent had been exercised, 49 percent, of the newly issued stock to the plaintiff.

On appeal, the defendant, having abandoned certain assignments of error addressed to the finding, pressed several other claims of error.

The court denied the defendant's motion to expunge two paragraphs of the complaint. The defendant's motion alleged that the paragraphs, which related the transactions between the parties in regard to Buckingham, were unnecessary, irrelevant and immaterial. Inasmuch as the plaintiff alleged that the Bentley agreement was "in line with the same terms and conditions" as the Buckingham deal, the paragraphs were not irrelevant. They were "not so foreign to the issues in the case that the justice should have granted the motion to expunge." *O'Keefe* v. *Atlantic Refining Co.,* 132 Conn. 613, 620, 46 A.2d 343; see *LaFrance* v. *LaFrance,* 127 Conn. 149, 153, 14 A.2d 739. The defendant also complains that the court's leaving the paragraphs in permitted the plaintiff to intro-

duce evidence of the prior agreement which would not otherwise have been admissible. As a general proposition, prior contracts, even between the same parties, are often held inadmissible to prove the making of the contract at issue. See McCormick, Evidence (2d Ed.) § 198; cf. Wigmore, Evidence (3d Ed.) § 377 (2) (a). The plaintiff alleged that the Bentley deal was "in line with" the Buckingham deal. Thus the Buckingham contract was independently admissible to prove the terms of the Bentley deal. " 'Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted not because it is shown to be competent, but because it is not shown to be incompetent. . . .' *Plumb* v. *Curtis,* 66 Conn. 154, 166, 33 A. 998." *Pitt* v. *Kent,* 149 Conn. 351, 357, 179 A.2d 626.

The defendant claims that specific performance is not a proper remedy in this case. Under our practice, specific performance, like other equitable relief, is not conditioned on an *allegation* that there is no adequate remedy at law. See *Gaul* v. *Baker,* 105 Conn. 80, 84, 134 A. 250. Generally contracts for the transfer of stock are not specifically enforceable because damages will suffice. 71 Am. Jur. 2d, Specific Performance, § 158. When the stock, however, is that of a closely held corporation, which is difficult to value in money, specific performance may be the only just remedy. *Crofut* v. *Layton,* 68 Conn. 91, 101, 35 A. 783; cf. *Corbin* v. *Tracy,* 34 Conn. 325, 327–28 (involving patent rights). To be specifically enforceable, a contract must be "fair, equitable, certain and mutual, consistent with policy and made on good consideration." *Burns* v. *Garey,* 101 Conn. 323, 330, 125 A. 467. Contracts of per-

sonal service are not specifically enforceable. *Wm. Rogers Mfg. Co.* v. *Rogers,* 58 Conn. 356, 364-65, 20 A. 467. Therefore the plaintiff could not be compelled to complete his performance. There is no lack of mutuality, however, in ordering the employer to perform as much of his obligation under the contract as the employee has already performed of his. 71 Am. Jur. 2d, Specific Performance, §167. General Statutes § 42a-8-319 clearly contemplates that a transferee may receive the portion of the stock for which he has paid.

The defendant also claims error in the admission of a letter to the plaintiff from the defendant's attorney. The defendant objected and took exception, but he gave as his reason only that "Mr. Green will be here, I expect." The expected arrival of the author of a letter is not a ground of objection recognized by the law.

The defendant claims that, because under the Buckingham contract the plaintiff was required to surrender his stock on termination of employment, the same requirement must be found in the Bentley deal. The court found that the Buckingham agreement formed the "basis" of the Bentley deal, but not that the terms were identical.

The defendant's claim that the court cannot order the defendant to transfer stock in the two corporations to the plaintiff because the corporations are not parties is without substance. He does not allege that the transfer is beyond his power to effect. As to stock which may in the future be issued by the corporations, the court's order runs against the defendant, not against the corporations, and it is his responsibility to assure compliance by exercising his powers as principal stockholder of the corporations.

The defendant's principal argument is that the agreement, being oral, was barred by one or more statutes of frauds requiring that certain agreements must be in writing in order to be enforceable. The statutes claimed to be operative by the defendant require a writing for: (1) the sale of an interest in land, General Statutes § 52-550; (2) a suretyship contract, § 52-550; (3) the sale of personal property for more than $5000, § 42a-1-206; and (4) the sale of securities, § 42a-8-319.

It is true that Bentley's basic asset was land. An agreement to transfer the stock of a corporation which owns an interest in real estate, however, is simply not an agreement for the sale of an interest in real estate.

In the eyes of the law, a corporation is a person, not the sum of its holdings. A contract by a corporation to buy or sell land is within the statute, and insofar as the purpose of the statute is to assure that contracts involving land are definite in their terms, that purpose is served. No similar purpose is served in requiring that an agreement to transfer stock be in writing, for the land owned by the corporation is adequately identified by the other contract, as is the price to be paid for the land.

The defendant claims that the promises by the defendant were for acts to be performed by the corporation, and therefore the agreement is rendered one of suretyship. The corporation was never a party to an agreement with the plaintiff, and owed him nothing; it is the defendant who agreed with, and was indebted to, the plaintiff. This agreement was not one of suretyship.

Nor is the agreement covered by General Statutes § 42a-1-206, which bars enforcement of contracts

for the sale of personal property beyond $5000 without a writing, because that statute specifically states that it does not apply to contracts for the sale of securities.

As to the claim that the agreement is one of those covered by General Statutes § 42a-8-319, there is merit. The statute is as follows: "A contract for the sale of securities is not enforceable by way of action or defense unless (a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or (b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or (c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or (d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price."

In its memorandum of decision, to which we may turn to ascertain the grounds upon which the trial court acted; *Smith* v. *Usher,* 130 Conn. 204, 206, 33 A.2d 137; the court stated that § 42a-8-319 covers only contracts "for the sale of a stated quantity of described securities at a defined or stated price" and that because the plaintiff's services did not constitute a defined or stated price, the agreement

was not covered by the statute. The statute applies to all contracts "for the sale of securities." The plaintiff relies on *Baldassarre* v. *Rare Metals Derivatives, Inc.*, 444 Pa. 100, 282 A.2d 262. There the court held that § 8-319 of the uniform commercial code did not apply to a contract to exchange services for money and stock. It reasoned that the definition of "sale" as "the passing of title from the seller to the buyer for a price" in article two of the uniform commercial code (our General Statutes § 42a-2-106) may be applied by analogy to article eight. Then it stated: "There is no 'price' for stock transferred pursuant to an employment contract. The only consideration is the employment itself. . . . [T]he contract in question is simply not a contract of sale." Id., p. 103. This is not persuasive. Black's Law Dictionary (Rev. 4th Ed.) defines "price" as "something which one ordinarily accepts voluntarily in exchange for something else . . . the consideration given for the purchase of a thing." The services of the plaintiff fit this definition of "price."

Some courts have found contracts which call for services on one side in exchange for stock on the other to be contracts of "employment" rather than "for the sale of stock" and thus outside this provision of the statute of frauds; *Spinney* v. *Hill*, 81 Minn. 316, 84 N.W. 116; *Baldassarre* v. *Rare Metals Derivatives, Inc.*, 444 Pa. 100, 282 A.2d 262, followed in *Hiller* v. *Franklin Mint, Inc.*, 485 F.2d 48, 51 (3d Cir.); other courts have rejected the argument. *Franklin* v. *Matoa Gold Min. Co.*, 158 F. 941 (8th Cir.); *Bingham* v. *Wells, Rich, Greene, Inc.*, 34 App. Div. 2d 924, 311 N.Y.S.2d 508; *Lattavo* v. *Green Acres, Inc.*, 47 Pa. D. & C. 2d 199; *Hewson* v. *Peterman Mfg. Co.*, 136 P. 1158 (Wash.). It is

noteworthy that article two of the uniform commercial code, which deals with contracts for goods, has an express provision for contracts which are for goods on one side, with the price to be paid in realty or goods on the other side. Section 42a-2-304 of the General Statutes provides that in such contracts "each party is a seller of the goods which he is to transfer," and that when the price is to be paid in realty the seller of goods is still subject to article two, although the transferor of the realty is not. Also, "[i]t is said that when the title to personal property is to be acquired by purchase, the statute [of frauds] will operate on and affect the contract in precisely the same manner whether the consideration for the purchase is to be paid in services, money, or anything else." 72 Am. Jur. 2d 668, Statute of Frauds, § 133; accord, *Grant* v. *Grant,* 63 Conn. 530, 542, 29 A. 15. To say that the statute of frauds does not apply to an agreement, albeit one of employment, which provides for the transfer of stock, is to emphasize one side of the contract and ignore the other. In *Bingham* v. *Wells, Rich, Greene, Inc.,* 34 App. Div. 2d 924, 311 N.Y.S.2d 508, the court analyzed the obligations under the contract individually. It held (p. 924) that "the *portion* of the employment contract pleaded by plaintiff involving a transfer of title to shares of stock for a price is a sale of securities within the purview of section 8-319 of the Uniform Commercial Code." (Emphasis added.) Accord, *Scarpinato* v. *National Patent Development Corporation,* 75 Misc. 2d 94, 347 N.Y.S.2d 623 (agreement containing an option to purchase stock) ; see also *Lattavo* v. *Green Acres, Inc.,* supra, 201 (contract has "some aspects of an employment contract, but . . . is also a contract for the sale of securities").

It has never been held that contracts calling for land on one side and services on the other are outside the statute of frauds because they are contracts of "employment" rather than for the sale of land. See *Anderson* v. *Zweigbaum,* 150 Conn. 478, 191 A.2d 133 (agreement to render housekeeping services in exchange for receiving house at the death of owner is within the statute of frauds for land); accord, *Costello* v. *Costello,* 134 Conn. 536, 59 A.2d 520.

Although the provisions of the statute of frauds appear in various parts of our General Statutes, they have a common source—The Statute for the Prevention of Frauds and Perjuries, 29 Charles II, c. 3 (1676)—and should be construed alike, insofar as possible. This contract would be covered by § 52-550 if it concerned services in exchange for land, and no other construction can reasonably or logically be made other than that it must be covered by § 42a-8-319 when it concerns services in exchange for stock.

It does not follow, however, that the contract is unenforceable because it is oral. The statute states that "[a] contract for the sale of securities is not enforceable . . . unless . . . (a) there is some writing . . . or (b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment." In this case, it is clear that the plaintiff has made payment, by rendering services, for the stock. Full performance by the plaintiff would have taken the contract out of the statute of frauds altogether because all the stock would have been paid for. This

principle antedates the uniform commercial code.[2] In *White* v. *Drew*, 56 How. Pr. 53 (N.Y.), the plaintiff gave valuable information about the stock market to the defendant in exchange for the promise to transfer stock. The court held that the contract was taken out of the statute of frauds by the plaintiff's performance, since the giving of information was the equivalent of cash payment for the stock.

It must be determined whether the defendant's action, in wrongfully preventing the plaintiff from fully performing under the contract, entitles the plaintiff to receive all the stock. Certainly a defendant who has wrongfully prevented the other party from completing performance cannot set up the nonperformance of the other as a defense. *Connelly* v. *Devoe*, 37 Conn. 570.

The normal rule on an employment contract is that when the employee is prevented from fully performing because the employer wrongfully fires him, the employee can recover the wages he would have earned under the contract, minus any wages which he has earned or could have earned elsewhere, and the burden of proof of the latter is on the employer. *Carter* v. *Bartek*, 142 Conn. 448, 451–52, 114 A.2d 923. In building contracts, which are admitted to be sui generis, substantial performance, even when the other party prevents full performance, only permits the plaintiff to recover the contract price minus the cost to complete the work, or the value of the work done. *M. J. Daly & Sons, Inc.* v. *New Haven Hotel Co.*, 91 Conn. 280, 289–90, 99 A. 853. No rule can be found which states that prevention

---

[2] In the case of land contracts, however, full payment alone has not sufficed to remove the bar of the statute of frauds. See *Grant* v. *Grant*, 63 Conn. 530, 539, 29 A. 15.

by the defendant turns the plaintiff's substantial performance into full performance, and to make such a rule in this case would be to evade the clear command of General Statutes § 42a-8-319, which requires that the plaintiff receive only as much stock as he has paid for, and renders the defendant's prevention of his performance irrelevant.

It is necessary to remand the case for a determination of what portion of the plaintiff's promised services are properly allocable to the stock rather than to the salary, and what portion of those services promised have been rendered.

It is true that the court's unattacked finding is that the contract was entire and not severable. This conclusion, however, is based on a common-law concept which must yield to the command of § 42a-8-319 that the buyer receive only the stock for which he has paid.

In view of the necessity for a remand, it is unnecessary now to consider the defendant's claim that the consideration due from the plaintiff under the contract was too indefinite to support a decree of specific performance. The trial court made no finding on the specific duties of the plaintiff, perhaps because it believed that the defendant's wrongful prevention of full performance by the plaintiff made the exact nature and term of his duties irrelevant. If, on remand, the plaintiff's duties prove too vague to permit an allocation and determination of the portion performed, the plaintiff would be relegated to a claim in quantum meruit.

There is error, the judgment is set aside and a new trial is ordered solely upon the issue of how much of the stock promised under the contract has been paid for, and for the rendition of judgment

for specific performance in accordance with this opinion; but if upon this issue the court is unable to make a determination, then the judgment is to be rendered in favor of the defendant.

In this opinion the other judges concurred.