[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this appeal from the Probate Court for the district of Fairfield the plaintiff, Richard B. Smith, one of the three children of Eleanor C. Smith, deceased, alleges that (i) the decedent's will should not have been admitted to probate because it was revoked by the decedent's subsequent divorce pursuant to § 45a-257 of the General Statutes, and (ii) the respondent, Gus Efthimiou should not have been appointed executor, though so named in the will because he has an irreconcilable conflict of CT Page 767 interest that prevents him from fulfilling his duties to the estate.
 Standard of Review
Since there is no record of proceedings before the probate court, including no transcript, the court is bound to evaluate the issues within the framework of a trial de novo and not review the decision of the probate court for an abuse of discretion.Andrews v. Gorby, 237 Conn. 12, 14-17 (1996); General Statutes § 51-73. The case was tried on an oral stipulation of facts, oral argument and the trial briefs.
 Background
The decedent Eleanor C. Smith and her first husband, Hyman H. Smith, had three children, Richard B. Smith, Bruce A. Smith and Ronald K. Smith. On May 10, 1979, Eleanor and Hyman Smith executed a trust agreement, the H.H. and E.C. Smith Trust, naming two for their sons, Richard and Bruce Smith, as trustee. Hyman Smith died on September 30, 1979, leaving a last will and testament which created a testamentary trust, the Hyman H. Smith Testamentary Trust, naming Richard and Bruce Smith as trustees. Under the H. H. and E. C. Smith trust, Eleanor Smith held a general power of appointment. The Hyman H. Smith Testamentary Trust, however, gave Eleanor Smith a limited power of appointment in which she could "appoint the remainder thereof, in such proportions as she shall elect among her three sons, Richard B. Smith, Bruce A. Smith and Ronald K. Smith, or their issue. . . ."[1]
Subsequently, Eleanor Smith married David Lukens. On September 21, 1984, Eleanor Smith filed for divorce in the Florida Circuit Court. Five months later, on February 5, 1985, Eleanor Smith executed a will, which exercised her limited power of appointment in the testamentary trust in favor of her son, Ronald K. Smith.[2] She also gave to Ronald K. Smith the residue of her estate.[3] Richard and Bruce Smith, however, were bequeathed one dollar ($1.00).[4] Additionally, by Article Second she bequeathed to her husband, David Lukens, "if he is my husband, and if he survives me, the sum of ONE DOLLAR ($1.00), who has never been a husband to me." Finally, the will appointed her attorney, Gus Efthimiou, Jr., as the executor of her estate.
Eleanor Smith's marriage to David Lukens was dissolved on April CT Page 768 11, 1985, by decree of the Circuit Court for Dade County, Florida. Approximately one month later on May 2, 1985, Eleanor Smith, Richard Smith, Bruce Smith and Ronald Smith executed a Family Settlement Agreement (hereinafter "the agreement") in an attempt to resolve the disputes that had arisen between the parties concerning the H.H. and E. C. Smith Trust and the Hyman H. Smith Testamentary Trust.[5] The agreement recited that the parties exchanged consideration in the amount of $10.00, in addition to the undertakings made in the agreement. The pertinent provisions of the agreement appointed Richard and Bruce Smith income beneficiaries of the H.H. and E. C. Smith Trust; designated Richard and Bruce Smith the remaindermen of the trust in the event that they survive Eleanor Smith; made Eleanor Smith cotrustee in the H. H. and E. C. Smith Trust, giving her fifty percent of the voting power and a manager's salary of $85,000.00 per year; created a trust called the E. C. and R. K Smith Trust; provided that Richard and Bruce Smith, as cotrustees of the H.H. and E.C. Smith Trust, transfer $1,000,000 to the E.C. and R. K. Smith Trust and required that each party waive all claims against all other parties arising prior to the execution of the agreement.
The agreement states that "[t]he foregoing obligation to withdraw and dismiss the said litigation is conditional only upon the payment of $1,000,000 to the E.C. and R.K. Smith Trust and is independent of all other covenants and undertakings contained in this agreement."
Finally, the parties agreed that "[u]pon the death of Eleanor C. Smith, the Restricted Estate of Eleanor C. Smith, real, personal and mixed, of whatever nature and wherever situated, which she now owns, including the power of appointment, shall pass to, and/or be exercised in favor of, Richard B. Smith and Bruce A. Smith in equal undivided shares, or to the survivor of Richard B. Smith and Bruce A. Smith, but this obligation upon Eleanor C. Smith shall terminate if Richard B. Smith and Bruce A. Smith predecease her."[6] To ensure such disposition, the agreement provides that "Eleanor C. Smith shall duly and promptly execute a last will and testament exbodying [sic] the provisions of this Agreement to make a will, and after such execution shall not alter or revoke any of the provisions thereof which embody and/or fulfill the provisions of this Agreement without the written consent of all parties to this Agreement. . . . This covenant to make a will shall be independent of all other covenants and undertakings contained in this Agreement and shall CT Page 769 be independently enforceable, regardless of the claimed or actual invalidity or unenforceability of any other term or provision of this Agreement."
In docket no. 96-0331506, (consolidated with 96-0331901) the petitioners attack the appointment of Gus Efthimiou as executor of Eleanor Smith's estate. The plaintiffs allege that they were aggrieved by the order of the probate court because Efthimiou has an irreconcilable conflict of interest that will prevent him from fulfilling his duties to the estate, in that beginning in the fall of 1994 [sic] and continuing through May 1995 [sic][7]
simultaneously with his representation of the deceased in the drafting of the will, he represented her in connection with the negotiation, drafting and execution of a family financial settlement agreement (the `agreement') dated May 2, 1985, thatinter alia, disposed of her property in a manner diametrically opposed to the disposition that she made in the will.
On June 6, 1996, Efthimiou filed a motion for summary judgement. The court, Melville, J., denied the motion because he failed to produce any documentation to support his position, and therefore, failed to meet his initial burden of proof. See Smithv. Efthimiou, Superior Court, District of Fairfield at Bridgeport, Docket No. 96-0331506, (November 20, 1997, Melville, J.).
In addition to the two probate appeals mentioned above in docket no. 96-0335729, Efthimiou brought an action against Richard Smith for breaching his contractual duties under the agreement and for violating "his fiduciary obligations and responsibilities to [Eleanor C. Smith] by acting in a manner contrary to the provisions of said Agreement and Trusts," the H.H. and E.C. Smith Trust and Hyman H. Smith Testamentary Trust. (Complaint ¶ 6.) In addition, Efthimiou alleged that "the defendant further breached his fiduciary duties to [Eleanor C. Smith] during her lifetime and to her estate subsequent to her death, as a Trustee of the H. H. and E. C. Smith Trust and the Hyman A. Smith Testamentary Trust." (Complaint ¶ 7.)
In response, Richard Smith filed an answer, including seven special defenses and a two count counterclaim. In the first count of the counterclaim, Smith alleges that Eleanor Smith breached the agreement "in that she failed to execute a Last Will and Testament in accordance with the agreement, and failed to exercise her power of appointment in accordance with the CT Page 770 agreement. . . . ." (Counterclaim, Count One, ¶ 2.) The second count of the counterclaim, alleging professional malpractice against Efthimiou, was stricken.[8]
In addition, Efthimiou filed a second action, docket no. 96-338445, against Jennine Smith as executrix of the Estate of Bruce A. Smith. The complaint, dated November 19, 1996, alleges identical causes of action against the Estate of Bruce A. Smith as were alleged in the action against Richard Smith. Jennine Smith, as executrix, filed an answer and six special defenses on November 24, 1997. No counterclaim was filed. Eleanor Smith died on February 19, 1994. Her February 5, 1985 will was admitted to probate by decree dated January 24, 1996. See Estate of EleanorC. Smith, Probate Court, judicial district of Fairfield (January 24, 1996, Caruso, J.). Her attorney, Gus Efthimiou, was named the executor of her estate.
 I
The parties have treated the validity of the will as being governed by Connecticut law rather than Florida law. The court's analysis will proceed on that basis. The parties also agree that the statute applicable to the facts of this case is what was then § 45a-257 (now § 45a-257c).[9]
In appeal No. 96-0331901 the plaintiffs argue that the contested will was revoked by General Statutes § 45a-257 (a) which in pertinent part states: "[i]f, after the making of a will, the testator marries or is divorced or his marriage annulled or dissolved . . . and no provision has been made insuch will for such contingency, such marriage, divorce, annulment, dissolution, birth or adoption of a minor child shalloperate as a revocation of such will, provided such divorce, annulment or dissolution shall not operate as a revocation of such will if the spouse of the testator was not a beneficiary under such will." (Emphasis added.) The plaintiffs argue that the will was revoked because the testator was married to David Lukens at the time of the execution of the contested will and divorced Lukens subsequent to the will's execution. Although the will provided that "I give, devise and bequeath to my husband, David Lukens, if he is my husband, and if he survives to me, the sum of one dollar ($1.00), who has never been a husband to me," the plaintiffs contend that the language is ambiguous and does not expressly provide for the contingency of divorce. The plaintiffs conclude that the will was revoked by the operation of General CT Page 771 Statutes § 45a-257 as a result of Ms. Smith's divorce from David Lukens.
The defendants contend that the will prepared for and contemplated the contingency of a divorce by employing the language "I give, devise and bequeath to my husband, David Lukens, if he is my husband, and if he survives me. . . ." (Emphasis added.) The defendants further argue that Lukens could only take under the will if he satisfied two conditions at the time of the testatrix's death: (1) if he survived her, and (2) ifhe was still her husband. (Emphasis added.) Finally, the defendants argue that the testatrix's will expressly and unambiguously contemplated the possibility that she might be divorced, and therefore, expressly provided for the contingency of divorce and was not subject to revocation because the divorce actually occurred. For this reason, General Statutes §45a-257 does not operate to revoke the will.
"To provide for a contingency is to prepare for the happening implied by its nature. Provision for, assumes and implies prevision of the possible event, foresight enough of the chance of its happening to indicate that any present undertaking, upon which its assumed realization might exert a natural and proper influence, was entered upon in full contemplation of it as a future possibility." Fulton Trust Co. v. Trowbridge,126 Conn. 369, 371-72 (1940). In determining whether a will provides for the contingency of a subsequent divorce, the court must look to "the language of the will itself; . . . without resort to extrinsic evidence of the testator's intent." Erickson v.Erickson, 246 Conn. 359, 370, (1998). In determining the testator's intent, "[the court] cannot rewrite a will or a trust instrument. The expressed intent must control, although this is to be determined from reading the instrument as a whole in the light of the circumstances surrounding the testator or settlor when the instrument was executed, including the condition of his estate, his relations to his family and beneficiaries, and their situation and condition. The construing court will put itself as far as possible in the position of the . . . [testator], in an effort to construe . . . [any] uncertain language used by him in such a way as shall, conformably to the language, give force and effect to his intention. . . . But [t]he quest is to determine the meaning of what the . . . [testator] said and not to speculate upon what he meant to say." (Citation omitted; internal quotation marks omitted.) Connecticut Bank Trust Co.. v. Lyman,148 Conn. 273, 278-79 (1961); see also Hartford National Bank CT Page 772Trust Co. v. Thrall, 184 Conn. 497, 502 (1981).
To determine whether a will has been revoked under General Statutes § 45a-257, our courts have examined the statute in the context of subsequent marriages; Erickson v. Erickson, supra,246 Conn. 259 (concluding that a bequest that states "[a]ll the rest, residue and remainder of my estate and property . . . I give, devise and bequeath to DOROTHY A. MEHRING," whom the decedent married two days after the execution of the will did not provide for the contingency of a subsequent marriage under General Statutes § 45a-257); Czepiel v. Czepiel,146 Conn. 493 (1959) (interpreting the phrase "if I leave a widow" as providing for the contingency of a subsequent marriage); after-born children; Blake v. Union New Haven Trust Co.,95 Conn. 194 (1920) (interpreting "I make no separate provision for any children I may have, because I know that my wife will herself make such provision for them out of my estate as I should approve and desire" as providing for the contingency of after-born children under General Statutes then § 4946 (subsequently § 45a-257)); Williams v. Williams, 15 Conn. Sup. 111, 112-13, (1946) (interpreting the word "issue" in clause of will, which states "I give, devise, and bequeath to my wife, . . . or, should she not survive me, to my issue who shall survive me . . ." as providing a contingency clause for subsequent born children under General Statutes then § 4880 (subsequently § 45a-257));Strong v. Strong, 106 Conn. 76, 81, (1927) (revoking will because the testator failed to include any contingency clause for an after born child); and adoption; Fulton Trust Co. v. Trowbridge,
supra, at 373 (revoking will under General Statutes then § 4880 (subsequently § 45a-257) because "[t]here is nothing in the will which can be construed as a prevision of adoption or provision for contingency" where testator executed will creating a trust for a child whom he adopted after the execution of the will).
For example, in Czepiel, supra, the court determined that the phrase "if I leave a widow, said widow is to have the life use of said house" provided for the contingency of a subsequent marriage, and therefore did not act to revoke the contested will under General Statutes then § 45-162 (subsequently §45a-257)[10] (Emphasis added.) Czepiel v. Czepiel, supra,146 Conn. 443. In making this determination, the court stated that the language of the will demonstrated that the testator envisioned the possibility of remarriage and made actual provision for that contingency. Id., 442. Although the plaintiff argued that the CT Page 773 contingency must be made in contemplation of marriage to the particular person whom the decedent actually married, the court rejected this argument and ruled that requiring proof of the particular person for whom the contingency was drafted would defeat the purpose of the statute and would be, in most instances, impossible to prove. Id., 442-43. As a result, the court held that the will was not revoked by the subsequent marriage of the testator. Id., 443.
Furthermore, in Blake v. Union New Haven Trust Co., supra, at 194, our Supreme Court discussed a contingency clause in a will relating to the birth of a subsequent child, examining the surrounding circumstances to ascertain the testator's intent when creating the will. In that case, the will recited that the testator made "no separate provision for any children I may have,
because I know that my wife will herself make such provision for them out of my estate as I should approve and desire." (Emphasis added.) Id., 196. At the time of the execution of the will, the testator had two children. Id. Four months later, the decedent's wife bore a third child. Id. After the death of the decedent, the will was admitted to probate. Id. The children appealed seeking to revoke the will, arguing that it had been revoked under General Statutes § 4946 (subsequently § 45a-247) because of the birth of the third child.[11] Id. On appeal from a dismissal by the trial court our Supreme Court examined the surrounding circumstances, namely the pregnancy of the testator's wife at the time the will was executed, to ascertain the testator's intent. The court held that the testator had created a valid contingency clause. Id. "His [the testator's] purpose to cover that possibility is manifest from the language he employed. Only a strained and wholly inapt use of the expression `children that I may have' can restrict it to the two then in existence. Moreover, when [the testator] used this term in the setting which the context gives it, he must be presumed to have regarded the birth of another child not, indeed, as a distant and speculative contingency, but as an event in actual expectation and reasonably certain to occur." Id., 196-97. The court stated that the language of the will "discloses a plain purpose to make provision for the contingency of an after-born child" and, as a result, the court affirmed the trial court's dismissal of the appeal. Id., 197.
Like Cziepiel v. Czepiel, supra, at 439, the contested will in the present case used the same language `if" to create a contingency clause providing for the event of divorce under CT Page 774 General Statutes § 45a-257[12] The language, "I give, devise and bequeath to my husband, DAVID LUKENS, if he is my husband, and if he survives me, the sum of ONE DOLLAR ($1.00), who has never been a husband to me," demonstrates that the testator envisioned the possibility of divorce from David Lukens and made actual provisions for that possibility by creating a conditional gift. Additionally, the conditional gift of one dollar to Lukens prepares for the possibility of death prior to her divorce to a man, "who has never been a husband to [her].' This is sufficient evidence of the testator's intent to provide for the contingency of divorce.
Moreover, in examining the surrounding circumstances in which the decedent drafted the present will, she must be presumed to have regarded the divorce of David Lukens not as a distant and speculative contingency, but as an event in actual expectation and reasonably certain to occur because at the time the decedent drafted the will, she was in the process of divorcing David Lukens. The decedent knew that the divorce was a distinct possibility when she executed the will because she commenced the divorce action only five months prior to the execution of the contested will. By creating a conditional gift of $1.00 contingent upon David Lukens continued marriage to her, the decedent made provision for two possible events viz: (i) divorce from David Lukens or (ii) the possibility of death in the interim. She had the foresight to create a conditional gift to prepare for this future possibility. For this reason, it is the conclusion of this court that Eleanor Smith created a valid divorce contingency clause sufficient to avoid revocation under General Statutes § 45a-257.
 II
The plaintiffs next argue that the Family Settlement Agreement (hereinafter "the agreement") constitutes a valid will which revoked the decedent's 1985 will. Specifically, they argue that the agreement contains a legal declaration of the disposition of the testator's property at death, relying on paragraph 6 of the document that provides, in pertinent part, that "[u]pon the death of Eleanor C. Smith, the Restricted Estate of Eleanor C. Smith, real, personal and mixed, of whatever nature and wherever situated, which she now owns, including the power of appointment, shall pass to, and/or be exercised in favor of, Richard B. Smith and Bruce A. Smith in equal undivided shares, or to the survivor of Richard B. Smith and Bruce A. Smith, but this obligation upon CT Page 775 Eleanor C. Smith shall terminate if Richard B. Smith and Bruce A. Smith predecease her." Moreover, the plaintiffs contend that the agreement meets the statutory formalities required for a valid will in Connecticut because it was signed by Ms. Smith in the presence of three witnesses and was attested by those witnesses who also signed the agreement in her presence. The plaintiffs maintain that "[b]ecause the Family Settlement Agreement expresses Ms. Smith's testamentary intent and is executed in accordance with the provisions of General Statutes § 45a-251, it can operate as a will or codicil under Connecticut law."
The defendants assert, however, that the agreement is not a will, but rather constitutes an agreement to make a will. The defendants rely on paragraph 10A of the agreement, which states that "Eleanor C. Smith shall duly and promptly execute a last will and testament exbodying [sic] the provisions of this Agreement to make a will, and after such execution shall not alter or revoke any of the provisions thereof which embody and/or fulfill the provisions of this Agreement without the written consent of all parties to this agreement. . . ."
The defendants argue that "[i]t is somewhat disingenuous for the plaintiffs-appellants to contend that the Settlement Agreement is really a will when that agreement purportedly contains Ms. Smith's promise to `make a Will'".
Furthermore, the defendant maintains that [t]he plaintiffs have expressly admitted in the pending counterclaim they filed in another action between the same parties, that the Family Settlement Agreement is not a will but a contract containing a promise by Eleanor Smith to make a Will. Thus, the defendant claims that the fact that Eleanor Smith never fulfilled her promise to make a new will "[a]t most . . . may provide a basis for a claim that Ms. Smith breached the Settlement Agreement."
"The trial court has the power to take judicial notice of court files of other actions between the same parties." Hryniewicz v.Wilson, 51 Conn. App. 440, 444 (1999). "Any material allegation in a counterclaim or other pleading not controverted by the reply, is deemed to be admitted." Lenox Construction Co. v.Colonial Construction Co., 93 Conn. 238-39 105 A. 467 (1919). "A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it.". Isaac v. Truck Service, Inc.,52 Conn. App. 545, 551 (1999). The court takes judicial notice of CT Page 776 the file in Efthimiou v. Smith, Superior Court, Bridgeport, Docket No. 96-335729. The first counterclaim, alleges that the decedent "breached the Agreement by failing to execute a will". Such an allegation is deemed to be an admission that the agreement was a contract between the decedent and the plaintiff, Richard Smith.[13]
Even assuming, without deciding, that the agreement satisfies the technical requirements of General Statutes § 45a-251:[14]
"[a] will is more than a document executed in compliance with the statutory formalities required for testamentary disposition." Barnes v. Viering, 152 Conn. 243, 246, (1964) (determining whether a letter constituted a will). A will is defined as `the legal declaration of intention as to the disposition of one's property after death. To this intention, made known through the written declaration, the law gives effect, and so executes the testator's will." Whitehill v. Halbing,98 Conn. 21, 23-24 (1922). "The most inflexible rule of testamentary construction and one universally recognized is that the intention of the testator should govern the construction, and this intention is to be sought in the language used by the testator in light of the circumstances surrounding and known to him at the time the [instrument] was executed." Hartford National Bank Trust Co. v. Thrall, supra, at 502. "If this declaration of intention is not a will, by the terms of the statute no will is revoked by it." Whitehill v. Halbing, supra, at 30.
For example, in Barnes v. Viering, supra, at 246, the Supreme Court ruled that a letter that was witnessed by three persons did not constitute a will. In that case, the plaintiff tried to admit to probate a letter from his deceased aunt which, as the plaintiff contended, made testamentary disposition, leaving the plaintiff her house and furnishings. Id. at 244-45. The letter stated, "[y]ou know this house and the furnishings that have been in the family for a good many years belong to you. It was Grandfather Brown's wishes to keep in the family to the last living relative and you Robert are the last one left. There is nothing I can do now but you can take it to court and file your claim if you have to." Id. at 245. In determining that the "letter did not constitute a will, the court stated that the letter [made] no disposition; on the contrary it states that no disposition is intended." Id., 246. Moreover, the court maintained that "[t]he will must contain language which in and of itself expresses the testamentary gift intended." Id. CT Page 777
In the present action, the words of the agreement do not support the proposition that the decedent intended the agreement to constitute a will. The agreement states that "Eleanor C. Smith shall duly and promptly execute a last will and testament exbodying [sic] the provisions of this Agreement to make awill . . ." As in Barnes v. Viering, supra, at 246 no disposition was intended by the terms of the agreement. Rather, the decedent intended that she would in the future, make a will, which would contain a testamentary disposition of her property. The agreement does not contain language which in and of itself expresses that a testamentary gift was intended at the time it was executed. Thus, the intent of the decedent is clear when she executed the agreement; she intended to make a will in the future and the agreement was not meant to be construed as a will at the time it was executed.
Moreover, the agreement lacks an essential element of a will. The agreement is not ambulatory. "If [the document] is a will, it must have that essential quality of a will which is expressed by the word "ambulatory". It is this ambulatory quality which forms the characteristic of wills." (Citation omitted.) Whitehill v.Halbing, supra, at 30-31. The agreement on the other hand, cannot be revoked and is independently enforceable by the parties to the agreement. See Whitehill v. Halbing, supra, at 30-31 (interpreting "ambulatory" as the ability to revoke a will consistent with the methods outlined by statute).[15] Paragraph A of the agreement provides, in pertinent part, that "Eleanor C. Smith shall duly and promptly execute a last will and testament exbodying [sic] the provisions of this Agreement to make a will, and after such execution shall not alter or revoke any of theprovisions thereof which embody and/or fulfill the provisions ofthis Agreement without the written consent of all parties to thisAgreement . . ." (emphasis added.) Moreover, the same paragraph states that `[t]his covenant to make a will shall be independent of all other covenants and undertakings contained in this Agreement and shall be independently enforceable, regardless of the claimed or actual invalidity or unenforceability of any other term or provision of this Agreement. . . ." (Emphasis added.) By definition, an instrument that cannot be altered or revoked without the written consent of the parties cannot be construed as ambulatory. Therefore, the agreement cannot be considered a "will" as the plaintiffs contend because it was not freely revocable by the testator, and the parties are freely able to bring an action against the decedent for her failure to perform the conditions of the agreement. CT Page 778
The court construes the relevant provisions of the agreement as a contract to make a will. See Crofut v. Layton, 68 Conn. 81, 97
(1896) (examining contract to make a will); see also L. RRealty v. Connecticut National Bank, 53 Conn. App. 524, 534-35, (1999); cert. denied, 250 Conn. 901 (1999) (defining elements of a valid contract); 1 W. Bowe D. Parker, supra, § 10.1 (discussing validity of contracts to make a will). As a contract, the plaintiffs are entitled only to contractual remedies for a breach of the agreement. See Crofut v. Layton, supra,68 Conn. 101 (allowing specific performance for failure to perform the conditions of the contract to make a will); see also 1 W. Bowe D. Parker, supra, §§ 10.27-10.30 (discussing various remedies for a breach of a contract to make a will).
In the only Connecticut case which could be found which discusses a contract to make a will, our Supreme Court, in Crofutv. Layton, supra, at 91 examined whether the contract to make a will was supported by consideration and whether the decedent failed to fulfill the terms of the agreement. The partners of Crofut Knapp, A. J. Crofut and J. H. Knapp and their sons, J. K. Crofut and P. N. Knapp, decided to change the partnership into a joint stock corporation. Id., 96. To execute this change, each partner was to transfer his individual interest in the partnership in exchange for shares in the joint stock corporation. Id. The partners also executed an agreement to make a will, which stated: "Each of said members of the two families now interested in the copartnership of Crofut Knapp, agree not to sell his stock in said new corporation during their lifetime, and further agree by will to bequeath their holdings of stock to the other members of the same family then living, that is, the said A. J. Crofut and J. K. Crofut are to bequeath by will their respective holdings to each other; and the said James H. Knapp and P. N. Knapp are likewise to bequeath their respective holdings to each other. . . ." (Emphasis added.) Id., 97. A. J. Crofut, however, executed a codicil to his will after the execution of the agreement, which bequeathed all of his shares in the partnership to his son, J. K. Crofut, consistent with the terms of the agreement, but upon the express condition that he pay his wife an annuity. Id. 99-00.
After Crofut's death, J. K. Crofut brought a suit against the decedent's wife and her daughter to compel the transfer and conveyance of the shares of stock in Crofut Knapp. Id., 92. The trial court found for the plaintiff, concluding that the decedent CT Page 779 failed to bequeath the stock consistent with the terms of the agreement and ordered the executor to transfer the stock unconditionally to the plaintiff. Id., 93. The defendants appealed and the Court considered two issues: 1) whether the agreement was supported by consideration; and 2) whether the decedent had fulfilled his promise to bequeath his shares of stock in the partnership. Id. at 95.
The court stated that the "agreement on the part of A. J. Crofut, [is] plain, direct, void of doubt and any suggestion of ambiguity, to hold during his life the 306 shares of stock apportioned to him, and to bequeath them by will to his son. . . ." Id., 97. The court declared that the agreement was supported by consideration because his son was to "sell out his interest in the firm business for 105 shares of stock in the new corporation, to hold that stock for life and to bequeath it by will to his father. . . ." Id., 98. Moreover, the court determined that A. J. Crofut's promise to bequeath had not been fulfilled because of the express condition found within the codicil. Id., 100. The court held that the agreement provided for `an absolute and unconditional bequest," and that the express condition to pay an annuity to the decedent's wife, "violates both the obligation and purpose of the agreement." Id. The court concluded that the plaintiff was entitled to specific performance for the breach of the agreement and affirmed the trial court's order to transfer unconditionally the stock bequeathed to the plaintiff at the decedent's death. Id. at 101.
As in Crofut v. Layton, the parties here also agreed by contract to make a will. Although the plaintiffs maintain that the Agreement is a will because it expressed a disposition of the decedent's property at her death, that provision is taken out of context. "A contract is to be construed as a whole and all relevant provisions will be considered together. . . . In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties." (Internal quotation marks omitted.) Tomlinson v. Boardof Education, 226 Conn. 704, 722 (1993). Reading the contract as a whole, the parties' intent is apparent from the express language of the agreement vis: the parties agreed by contract to make a will. The pertinent provisions state that "[u]pon the death of Eleanor C. Smith, the Restricted Estate of Eleanor C. Smith, real personal and mixed, of whatever nature and wherever situated, which she now owns, including the power of appointment, shall pass to, and/or be exercised in favor of, Richard B. Smith CT Page 780 and Bruce A. Smith in equal undivided shares, or to the survivor of Richard B. Smith and Bruce A. Smith, but this obligation shall terminate if Richard B. Smith and Bruce A. Smith predecease her . . . Eleanor C. Smith shall duly and promptly execute a last will and testament exbodying [sic] the provisions of this Agreement to make a will, and after such execution shall not alter or revoke any of the provisions thereof which embody and/or fulfill the provisions of this Agreement without written consent of all parties to this Agreement. . . ." (¶ 10A.) (Emphasis added.) The court concludes that the provision in the will that expresses a disposition of the decedent's property at her death should not be construed as a will, but rather as a provision that was to be incorporated into a future will that the decedent contractually committed herself to make.[16]
Finally, the agreement cannot be deemed to be a will for yet another reason. In construing the agreement as a contract to make a will, the parties exchanged consideration for the promises embodied within the agreement. See Crofut v. Layton, supra,68 Conn. 97 (discussing consideration in contracts to make a will). The agreement states, `IT IS THEREFORE AGREED, in consideration of Ten ($10.00) dollars and other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged. . . .` (Agreement, pp. 2-3) Additionally, Richard and Bruce Smith were remaindermen under the H.H. and E. C. Smith Trust. Furthermore, the agreement states that "[t]he foregoing obligation to withdraw and dismiss the said litigation is conditional only upon the payment of $1,000,000 to the E. C. and R. K. Smith Trust and is independent of all other covenants and undertakings contained in this agreement." (¶ 14.)
Also, the decedent was named a co-trustee of the H. H. and E. C. Trust, and was to receive fifty percent of the voting power and a management salary of $85,000 per year. (¶ 4G.) Finally, Richard and Bruce Smith became beneficiaries and remaindermen under the H. H. and E. C. Smith. Because the parties to the agreement received consideration for the promises made within the agreement and obtained a right independently to enforce the agreement to make a will, the agreement cannot be construed as a will, but must be construed as a contract to make a will. Necessarily, therefore, the agreement does not revoke the prior will of the decedent.
 III
CT Page 781
In file number 96-0331506 the plaintiffs maintain that the probate court should not have appointed Efthimiou as executor of Eleanor Smith's estate because of a conflict of interest. Relying on Ramsdell v. Union Trust Co., 202 Conn. 57, 65, (1987), the plaintiffs argue that the roles which the defendant, Efthimiou, played in the execution of Eleanor Smith's Will and the Family Settlement Agreement are in conflict with his fiduciary role as the Executor of the Estate of Eleanor Smith. In defining this conflict, the plaintiffs contend that "[a]s a proponent of the Family Settlement Agreement, Efthimiou is advocating the very instrument which is directly at odds with Ms. Smith's Will. Having represented Ms. Smith in connection with both instruments, Efthimiou is now forced to take diametrically opposed positions in this litigation. For example, in order to establish Ms. Smith's own performance under the Family Settlement Agreement, Efthimiou will necessarily undermine his fiduciary obligation to the Estate of Eleanor Smith as a proponent of the Will." (Plaintiffs' trial memorandum, pp. 11-12.) Consequently, they maintain that Efthimiou will have divided loyalty to the decedent's estate, and therefore, he should not have been appointed as executor of her estate.
"A Probate Court has no discretion to appoint someone other than the person named; testators are entitled to select their own executors, and those persons may not be rejected unless excluded by common law or statute." Appeal from Probate of Bencivenga,30 Conn. App. 334, 338 (1993), aff'd, 228 Conn. 439, (1994). General Statutes § 45a-242 (a) sets forth the standard for the removal of an executor. The statute provides that "[i]f any fiduciary becomes incapable of executing his trust, neglects to perform the duties of his trust, wastes the estate in his charge, or fails to furnish any additional or substitute probate bond ordered by the court, the court of probate having jurisdiction may, upon its own motion, or upon the application and complaint of any person interested or of the surety upon the fiduciary's probate bond, after notice and a hearing, remove such fiduciary." General Statutes § 45a-242 (a); see also General Statutes § 45a-315 (defining fiduciary as used in § 45a-242 to include an executor or administrator of a decedent's estate).
The determination of whether grounds exist for an executor's removal lies within the discretion of the probate court. SeeRamsdell v. Union Trust Co., supra, at 65. "[A]ny discretion of the probate court . . . existing in the first instance, passes to the superior court on appeal and is to be exercised by it in an CT Page 782 independent determination, without regard to the result reached by the probate court." (Internal quotation marks omitted.)Finizie's Appeal from Probate, 6 Conn. App. 115, 115-16 (1986); see also Andrews v. Gorby, 237 Conn. 12, 15 (1996). "On appeal from probate, the trial court may exercise the same discretion de novo, reviewing the facts relating to the propriety of removal without regard to the Probate Court's decision." Ramsdell v.Union Trust Co., supra, 202 Conn. 65.
"An important aspect of an executor's fiduciary responsibility is the duty to maintain an undivided loyalty to the estate. . . . [O]ne interested in an estate has the right to have its representative wholly free from conflicting personal interests. . . . When the executor of an estate places itself in a position where its interests conflict with those of an estate, the executor's ability to represent fairly the interests of the estate is irreparably tainted. When [such] a situation appears . . . it is the positive duty of the court to remove the executor. . . ." (Citations omitted.) Ramsdell v. Union TrustCo., supra, at 65. "Thus, in order to justify removing [an executor], there must be evidence of a clear and continuing conflict of interest rendering the [executor] unfit to perform its duties to the estate." Id., 67; see also Finizie's Appealfrom Probate, supra, at 116 (removing administratrix because she had failed to settle estate after eight and one-half years);Palumbo v. Probate Court, Superior Court, of Waterbury, Docket No. 95-120614 (February 27, 1995, Sullivan, J.) (denying plaintiff's motion for summary judgment where she alleged that the executor had a conflict of interest because of his dual role as executor, trustee, attorney-in-fact and business advisor);Massini v. Massini, Superior Court, District of Middlesex, No. 92-060723 (June 4, 1992, Austin, J.) (denying defendant's motion to strike because plaintiffs allege conflict of interest where defendant procured a joint bank account with decedent).
In Ramsdell v. Union Trust Co., supra, at 57, the decedent created a revocable inter vivos trust in which she appointed the defendant Union Trust Company, as one of the trustees. The trust provided that the trustees were to make periodic payments to the decedent during her lifetime. Several months later, the probate court appointed a conservator to provide for the decedent's benefit and care. Thereafter, the defendant paid income and principal to the conservator, but the defendant neglected to seek permission from the probate court to make payments from the trust and failed to report the payments to the probate court. The CT Page 783 conservator never provided the trustees with receipts for expenditures made on the decedent's behalf, nor did he explain the use of those funds. Furthermore, the record showed that the defendant as trustee never investigated the conservator's use of the trust funds. The conservator was subsequently removed for failure to properly account for his expenditures.
After the decedent died, the defendant was appointed executor of the decedent's estate. The plaintiffs then sought to remove the defendant as executor, alleging a conflict of interest because of his dual capacity as executor and trustee. The plaintiffs claimed that the estate had a valid claim against the defendant as trustee for negligence in the administration of the trust funds and objected to the inventory filed by the defendant listing as an asset a claim against the conservator, but omitting any claim against the trustees. Thereafter, the defendant amended the inventory to add a "possible secondary claim" against the trustees. Id., 61. The plaintiffs appealed to the trial court after the probate court refused to remove the defendant. Although the court dismissed the plaintiffs' appeal, it "determined that the defendant's status as trustee placed it in a position of `potential conflict' with its duties as executor." Id., 62.
On appeal from the trial court's decision, the Supreme Court found error in the trial court's refusal to remove the defendant. The court stated that "[i]f the estate has a viable claim against the trustees the defendant has a fiduciary duty to bring such claim on the estate s behalf." Id., 66. Because the executor and the trustee were the same, the executor had a conflict of interest because of his "clear interest in avoiding the institution of litigation against itself. . . ." Id., 68. The court maintained that the executor "cannot effectively perform its fiduciary duty of objectively appraising, and, if necessary, prosecuting, claims against itself which constitute potential assets of the estate. . . . If valid grounds exist for bringing a claim against the defendant, in its capacity as trustee or executor, and the defendant, because of its conflict of interest, refuses to pursue such claims, the defendant is incapable of executing its fiduciary duties and should be removed." (Citation omitted.) Id. at 66.
The court further elaborated that "[t]he existence of a potential conflict of interest does not, of itself, mandate removal of the defendant as executor. Removal of an executor is an extraordinary remedy designed to protect against harm caused CT Page 784 by the continuing depletion or mismanagement of an estate." Id. Moreover, "[i]n the absence of continuing harm to the interests of the estate and its beneficiaries, removal is not justified merely as a punishment for a fiduciary's past conduct. . . . Thus, in order to justify removing the defendant in this case, there must be evidence of a clear and continuing conflict of interest rendering the defendant unfit to perform its duties to the estate." (Citation omitted.) Id. at 67. Once the court concluded that a conflict of interest existed, the court went on to determine whether the conflict of interest "renders [the executor] unfit to continue in the service of the estate . . . [by assessing] whether the estate's potential claims against the defendant have sufficient substance to warrant consideration by a successor fiduciary uninfluenced by a motive to avoid litigation." Id. Under the circumstances, the court maintained, "the estate's potential claims against the defendant deserve serious independent consideration." Id. In reviewing the potential claims against the defendant, the court concluded that the defendant's failure to bring an action on behalf of the decedent's estate against the trustee constituted a conflict of interest which prevented the executor from performing his fiduciary duties to the estate and required the court to remove the defendant as executor. Id., 71.
In this case the facts alleged by the plaintiffs do not rise to the level of a continuing harm to the interests of the estate and its beneficiaries. As the court emphasized in Ramsdell v. UnionTrust Co., supra, at 67, in order to justify removing an executor, there must be evidence of a clear and continuingconflict of interest rendering the defendant unfit to perform its duties to the estate. (Emphasis added.) The defendant's duty as executor is not compromised by his role in the execution of the agreement and will).[17] In Ramsdell, the conflict of interest arose because of the defendant's dual capacity as executor and as trustee in the face of a viable claim of the estate against the trustee. The court recognized that a clear and continuing conflict of interest existed because the defendant, as executor, would have had to bring an action against himself as trustee, which he refused to do.
In this case, the plaintiffs fail in their attempt to equate the factual circumstances of Ramsdell with Efthimiou's role as the decedent's attorney in executing both the agreement and the will and his role as executor. This case, however, is quite unlike Ramsdell. In Ramsdell, the defendant's capacity as CT Page 785 executor and trustee collided thereby creating the conflict of interest. The present case does not present a similar conflict. To illustrate, the plaintiffs here make no showing that valid grounds exist for the estate to bring a claim against Efthimiou in his capacity as attorney for Eleanor Smith because he improperly drafted the will or the agreement nor is there any claim that the estate, acting through Efthimiou, has failed or refused to bring such a claim. In short, the plaintiffs fail to identify any clear and continuing conflict of interest arising from Efthimiou's fiduciary duties as executor that is antagonistic to his function as executor.
The plaintiffs next argue that Efthimiou's duties to the estate are compromised because he takes the position that the agreement is not a will, but a contract to make a will. As executor, Efthimiou has a fiduciary duty to defend the will and protect the interest of the beneficiaries. General Statutes § 45a-234
(18) provides that a fiduciary has the power to "compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle claims in favor of or against the estate or trust as the fiduciary shall deem advisable, and the fiduciary decision shall be conclusive between the fiduciary and the beneficiaries of the estate or trust in the absence of fraud, bad faith or gross negligence of the fiduciary." (Emphasis added.) "In general, it is the duty of an executor or administrator to take custody of the estate and to administer it in such a manner as to preserve and protect the property therein for ultimate distribution to the proper persons." In Re Estate of Zajicek,
Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 528186 (February 27, 1997. Lavine, J.). By using the agreement to support the validity of the will, Efthimiou is acting consistently with his duty as executor. Although portions of the decedent's will may ultimately come into conflict with the agreement because of the decedent's conduct, the remainder of the will remain intact. But pursuing this course, Efthimiou, as executor, carries out the decedent's intent and prevents the decedent's estate from passing by intestacy.
As a final reason the plaintiffs contend that Efthimiou should be removed from his capacity as executor of the decedent's estate because he neglected his duties in failing to submit the will to probate as required under General Statutes § 45a-282 (a) until over one year after the decedent's death. They argue that "[t]his failure to comply with the provisions of General Statutes § 45a-282 (a) constitutes a material breach of his duty which CT Page 786 subjected him to the imposition of fines set forth in General Statutes § 45a-282." As a result, the plaintiffs assert that the violation of the statute, per se, mandates that the court remove Efthimiou as executor of the decedent's estate.
General Statutes § 45a-282 (a) states, in pertinent part, that "[a]ny person having in his possession any will or codicilshall, forthwith, after he has knowledge of the death of the testator, deliver such will either to the person designated to bethe executor or one of the persons designated to be an executor thereof, or to the judge, clerk or assistant clerk of the court of probate which by law has jurisdiction of the estate of such deceased person." (emphasis added). Subsection (b) of the statute provides a penalty for the failure of a custodian to present the will to the executor. It states that "[o]n the neglect of such person to do so within the period of thirty days after he has knowledge of the death of the testator, he shall be fined not more than one thousand dollars or imprisoned no more than one year or both."
General Statutes § 45a-282 is inapplicable to this case. Efthimiou, as executor, was already in possession of the will consistent with the terms of General Statutes § 45a-282. Rather, the appropriate statute is General Statutes § 45a-283. General Statutes § 45a-283 (a) provides that "[e]very person having knowledge of his designation in a will as an executor of a testator's estate shall, within thirty days next after the death of the testator, apply for probate of the will to the court of probate of the district where the testator was domiciled at his death." In the event of the executor's neglect to apply for probate of the will, the executor "shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both."
The defendant answered the plaintiffs request for admissions,Smith v. Efthimiou, docket no. 96 331901, in which the defendant admitted that he "did not produce the Will to the Probate Court until February, 1995." Furthermore, the plaintiffs asked the defendant whether the "had custody and/or control of the Will at all times from January, 1994 until he produced it to the Probate Court in February, 1995." The defendant admitted that `[t]he Will, while in his possession, was temporarily misplaced when he moved his office. As soon as it was located, he filed it with the Probate Court." CT Page 787
The plaintiffs have cited no authority to support the proposition that violation of this statute, ipso facto,
disqualifies an executor from service in such capacity.
 Conclusion
In summary, the court holds that (1) the last will and testament of Eleanor C. Smith dated February 5, 1985 was not revoked by the testatrix's subsequent divorce from David Lukens; (2) the family settlement agreement did not revoke the above mentioned will; and, (3) Gus Efthimiou was properly qualified and appointed executor under the last will and testament of Eleanor C. Smith.
The appeals are dismissed and judgment may enter for the defendants in both cases.
THE COURT,
Mottolese, Judge